Kenneth Lee GRIFFIN, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

Sept. 19, 1978.

Rehearing Denied Oct. 31, 1978.

Jack E. Farley, Public Advocate, Larry H. Marshall, Asst. Public Advocate, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Mark F. Armstrong, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

By judgment of the Warren Circuit Court the appellant was found guilty of first-degree sodomy (KRS 510.070(1)(a)) and kidnapping (KRS 509.040(1)(b), (c)).  He was committed to the custody of the Bureau of Corrections to serve a sentence of 20 years

for the former offense and 20 years and one day on the latter. The sentences were ordered to run consecutively. This appeal is from the kidnapping conviction only. The appellant argues three grounds for reversal.

The appellant admits anal intercourse with the complaining witness; however, he contends that it was by consent and at the solicitation of the Commonwealth's witness Robert Lyon. His evidence tending to support his defense contradicted that of the Commonwealth. The jury was entitled to reject the testimony offered by the appellant and to accept that offered by the Commonwealth, or to reject that offered by the Commonwealth and accept that offered by the appellant. It chose to believe the Commonwealth's witnesses. A statement of the Commonwealth's evidence is necessary to demonstrate the fallacy of the appellant's alleged errors.

On Saturday, June 25, 1977, at 9:00 p. m., Robert Lyon, 17 years of age, reported to work at the Park City Daily News, a local Bowling Green, Kentucky, newspaper. At about 2:00 a. m. Lyon left his job on a coffee break, ostensibly for the purpose of getting something to eat and to look for a friend. He was unable to locate his friend, and while driving back to work he was stopped by what he thought were two men and a woman. One of the men pulled Lyon out of the car and drove it to a house known as 513 Kentucky Street, Bowling Green, Kentucky, about one-half block away. The appellant and one of the other persons held Lyon and forced him to go with them into the house where the car had been driven. The appellant was dressed as a woman and Lyon was of the opinion that he was in truth and in fact a woman. Once Lyon was inside the house, the two men left the premises and left Lyon alone with the appellant. The appellant then announced that he had a 38-caliber handgun in his purse. He removed Lyon's clothing and threw him face down on a couch. He then rubbed Lyon's rectum with vaseline and committed anal intercourse. The appellant continued this conduct for about one and one-half hours. In an effort to change positions, the appellant momentarily released Lyon, who jumped up, grabbed a bottle and hit the appellant on the head. While the appellant was suffering from the blow to his head, Lyon hurriedly made his escape through a window, but without clothing other than one sock. He grabbed a towel from his automobile as he ran by in his escape and ran back to the place of his employment, where he secured assistance.

As to the charge and conviction of kidnapping, we need to reflect on the definition of the crime (KRS 509.040) and the exemption provision of KRS 509.050. KRS 509.040, the kidnapping statue provides:

"(1) A person is guilty of kidnapping when he unlawfully restrains another person and when his intent is:

(a) To hold him for ransom or reward; or

(b) To accomplish or to advance the commission of a felony; or

(c) To inflict bodily injury or to terrorize the victim or another; or

(d) To interfere with the performance of a governmental or political function; or

(e) To use him as a shield or hostage.

(2) Kidnapping is a capital offense unless the defendant voluntarily releases the victim alive, substantially unharmed, and in a safe place prior to trial, in which case it is a Class B felony."

KRS 509.050, the exemption statute, provides:

"A person may not be convicted of unlawful imprisonment in the first degree, unlawful imprisonment in the second degree, or kidnapping when his criminal purpose is the commission of an offense defined outside this chapter and his interference with the victim's liberty occurs immediately with and incidental to the commission of that offense, unless the interference exceeds that which is ordinarily incident to commission of the offense which is the objective of his criminal purpose. The exemption provided by this section is not applicable to a charge of kidnapping that arises from an interference with another's liberty that occurs

incidental to the commission of a criminal escape."

The appellant argues that even though the jury found him guilty of kidnapping, the Commonwealth's evidence that Lyon was forced to go a distance of only one-half block and was forcibly restrained for a period of only one and one-half hours brings the case within the exemption provided for by KRS 509.050 and mandates a finding of not guilty of the charge of kidnapping.

■ In order to determine whether the kidnapping exemption is applicable, we must apply a three-pronged test. First, it must be determined whether the appellant's criminal purpose was the commission of a criminal offense defined outside KRS Chapter 509. Secondly, it must be determined whether the interference with Lyon's liberty occurred immediately with and incidental to the commission of the offense of sodomy. Finally, it is necessary to determine whether the interference with Lyon's liberty exceeded that which is ordinarily incident to the commission of the act of sodomy. The three elements of the exemption statute are joined with the conjunctive "and." If any one of these three factors is not mandated by the evidence, then the appellant is not entitled to the benefit of the exemption statute. Simply stated, the appellant must jump through three hoops and the failure to jump through any one of the three hoops is a failure to establish his entitlement to the benefit of the exemption statute. The appellant failed to at least clear the third hoop and thereby is not entitled to the benefit of KRS 509.050. We find it unnecessary, therefore, to determine whether the appellant cleared hoops one and two.

The offenses of kidnapping and the applicability of the exemption provided by KRS 509.050 have been the subject of much recent consideration and writing by this court. We deem it unnecessary at this time to go into a further instructive dialogue. *Calloway v. Commonwealth*, Ky., 550 S.W.2d 501 (1977); *Spencer v. Commonwealth*, Ky., 554 S.W.2d 355 (1977); *Timmons v. Commonwealth*, Ky., 555 S.W.2d 234 (1977).

The trial judge did not err in refusing to grant a directed verdict of not guilty.

■ The appellant next argues that the prosecutor had no authority to elect to try the appellant for a Class A felony of kidnapping. Subsequent to the jurors being qualified by the court and prior to the Commonwealth's voir dire, the following colloquy took place:

"Mr. Caudill: The Commonwealth moves at this time to prosecute the crime of kidnapping as a Class A Felony in this case, *Commonwealth vs. Kenneth Lee Griffin*.

Mr. Poole: The defendant would join in on that motion, Your Honor."

The trial court granted the joint motion and the trial proceeded as if the appellant was being tried for the offense of kidnapping as a Class A felony rather than as a capital offense.

The court, the Commonwealth's Attorney and counsel for the appellant apparently were all under the erroneous impression that such an election could be properly made. However, KRS 532.030, which had provided for such an election, had been repealed at the 1976 Special Session of the Kentucky General Assembly and the repeal was effective as of December 22, 1976. The offense occurred in June, 1977, and the trial commenced in August, 1977, all subsequent to the repeal of KRS 532.030. Consequently, the right of election had ceased to exist. In the event counsel for appellant was aware that the right of election had been repealed, yet, nevertheless, joined in the motion to avoid the possibility of a capital offense conviction, then he would have been playing sharp with the court and could not in good conscience claim error. We prefer, however, to opine that counsel for the appellant, as well as the Commonwealth's Attorney and the trial court, was not cognizant of the repeal of KRS 532.030. Nevertheless, the appellant was not prejudiced by the election. As a matter of fact, he was benefited by it since the instructions which the court actually gave to the jury limited the penalty on a finding of guilty of kid-

napping to confinement in the penitentiary for 20 years or life. The death penalty instruction was not given although authorized. KRS 509.040(2) defines kidnapping as a Class B felony if, and only in the event, the victim is voluntarily released, substantially unharmed, and in a safe place. In the event the victim is not voluntarily released or not substantially unharmed or not released in a safe place, it is a capital offense punishable by death.

Robert Lyon was not voluntarily released or released at all. He made his escape. He was not substantially unharmed, unless you classify one and one-half hours of sodomy and, as Lyon's said, "I was sore in my anus, I was sore in my privates, my head was sore from where they pulled my hair and hit me with knuckles, and my upper arms were sore where the men were taking me down to the house, a few fingernails stuck in my arms," as being unharmed. We do not so construe it. The escape was not from a place of safety. Consequently, the appellant was entitled to an instruction on the capital offense of kidnapping, which carried the death penalty. The instructions actually given by the trial judge submitted only a Class A felony offense, which carried a penalty of 20 years to life. Therefore, the appellant actually received more favorable instructions than those to which he was entitled. It is beyond cavil that the instructions given to the jury could have carried, but did not, a provision for the infliction of the death penalty.

■ The appellant argues that KRS 532.030 is unconstitutional since it authorizes the death penalty for the capital offense of kidnapping. He suggests that *Eberheart v. Georgia*, 433 U.S. 917, 97 S.Ct. 2994, 53 L.Ed.2d 1104 (1977), stands for the proposition that the death penalty is cruel and inhuman punishment if inflicted for kidnapping. The appellant then reasons that since the penalty of death is unconstitutional, the alternative penalty of 20 years to life falls with the death penalty provision. The fallacy of this argument is twofold. First, *Eberheart* does not stand for the proposition that the penalty of death in a kidnap-

ping case is unconstitutional. Eberheart was found guilty of rape and kidnapping. The United States Supreme Court, in disposing of the case, cited *Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), as authority for its disposition of the *Eberheart* case. *Coker*, however, refers only to the crime of rape. We do not find *Eberheart* to be dispositive of the present issue. Secondly, the appellant would have this court strike down all of KRS 532.030. Assuming arguendo that the statute providing for the death penalty in a kidnapping case is unconstitutional, it does not necessarily follow that the 20 years to life provision falls with it. In *Kentucky Municipal League v. Commonwealth of Kentucky, Department of Labor*, Ky., 530 S.W.2d 198 (1975), we said:

"It is a well-established rule that portions of a statute which are constitutional may be upheld while other portions are eliminated as unconstitutional. * * * "

KRS 446.090 provides:

"Severability.—It shall be considered that it is the intent of the general assembly, in enacting any statute, that if any part of the statute be held unconstitutional the remaining parts shall remain in force, unless the statute provides otherwise, or unless the remaining parts are so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that the general assembly would not have enacted the remaining parts without the unconstitutional part, or unless the remaining parts, standing alone, are incomplete and incapable of being executed in accordance with the intent of the general assembly."

We do not believe that the 20 years to life penalty is so essentially and inseparably connected with and dependent upon the death penalty provision that it is apparent that the General Assembly would not have enacted the 20 years to life provision without enacting the death penalty provision.

■ Lastly, the appellant states that he was denied a fair trial when the trial court allowed the prosecution to improperly bolster the testimony of the complaining wit-

ness. Without objection from counsel for appellant, the Commonwealth's Attorney interrogated Lyon relative to a written statement to Detective Lancaster and elicited from him that his oral testimony was essentially the same as the written statement. In the interrogation of Officer Helm, the Commonwealth's Attorney, without objection of appellant's counsel, elicited from him that the written statement was essentially the same as the account which Lyon gave him when Lyon first reported the event. In his closing argument, the Commonwealth's Attorney alluded to the written statement and its similarity to the oral testimony given by Lyon. The interrogation and summation of the Commonwealth's Attorney, if improper, were not such as would raise the impropriety to constitutional proportions. No objection was made either to the interrogation or to the closing argument. In appellant's brief he writes:

"It must be admitted that this issue has not been properly preserved for appellate review. However, there are many factors which militate in favor of this Court's consideration of this error on appeal."

The errors, if any, were waived. *McDonald v. Commonwealth*, Ky., 554 S.W.2d 84 (1977); *Wylie v. Commonwealth*, Ky., 556 S.W.2d 1 (1977).

The judgment is affirmed.

CLAYTON, JONES, LUKOWSKY, REED and STEPHENSON, JJ., concur.