**Harold Joe MILLS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No.  2001–SC–0226–MR.

Supreme Court of Kentucky.

Jan. 23, 2003.

Shelly R. Fears, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

A.B. Chandler III, Attorney General, Anitria M. Franklin, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

GRAVES, Justice.

Appellant, Harold Joe Mills, was convicted in the Knox Circuit Court of first-degree robbery and of being a second-degree persistent felony offender. He was sentenced to a total of fifty years imprisonment and appeals to this Court as a matter of right. For the reasons stated herein, we reverse the convictions and remand the matter to the circuit court for a new trial.

Around 10:00 p.m. on July 27, 2000, Brandon Gray, a gas station attendant at Jack's Stop and Shop, observed two men approaching the gas station from the neighboring car wash. About the same time, a blue van pulled up to the gas

pumps and the two men went into the store as Gray serviced the van. After the van left the station, the two men approached Gray, the larger man placing him in a "headlock" from behind. When Gray struggled to escape, the shorter man pulled out a pocketknife and threatened to kill Gray, although the assailant never opened the blade of the knife. Gray gave the two men approximately $100 and they left.

Subsequently, Gray identified Appellant and his brother, co-defendant Ricky Mills, from a photo line-up. Also, Gray's school friend, Richard Honeycutt, showed Gray photos of the Mills brothers, whom, as it turned out, were Honeycutt's uncles. Appellant and his brother were thereafter indicted for first-degree robbery.

In addition to Gray, the Commonwealth's witnesses at trial included Jack Ketchum, the owner of Jack's Stop and Shop, Ricky Rhodes, a convicted felon who informed police that Appellant had bragged that he and his brother had committed the robbery, and Officer Bill Swafford, the lead investigator on the case. Although Appellant chose not to take the stand in his defense, Ricky Mills testified that he and Appellant were at his girlfriend's apartment playing cards at the time of the robbery. Similarly, Mitzi Feldman, Ricky's girlfriend, testified that both men were at her apartment the entire evening of July 27, 2000.

The jury convicted both Appellant and Ricky Mills of first-degree robbery. Ricky Mills was sentenced to ten years imprisonment, and Appellant was sentenced to twenty years enhanced to fifty years imprisonment as a result of the second-degree persistent felony offender conviction. Appellant appeals to this Court as a matter of right.

## I.

Prior to opening statements, the Commonwealth moved to invoke RCr 9.48 for the separation of witnesses, but requested that Officer Swafford and Brandon Gray both be allowed to remain at the prosecution's table throughout the trial. Over defense objection, the trial court granted the motion. Appellant argues that it was prejudicial error for Gray to be present in the courtroom during the testimony of Jack Ketchum, Ronnie Rhodes, and particularly Officer Swafford. We agree.

RCr 9.48 provides:

If either a defendant or the Commonwealth requests it, the judge may exclude from the hearing or trial any witness of the adverse party not at the time under examination, so that witnesses may not hear the testimony of the other witnesses. This provision shall not apply to parties to the proceeding.

The purpose of RCr 9.48 is "to prevent a prospective witness from adjusting his testimony to conform to that which he hears during the interrogation of other witnesses." *Jacobs v. Commonwealth*, Ky., 551 S.W.2d 223, 225 (1977). Although RCr 9.48 has been construed as giving the trial court broad discretion with regard to the separation of witnesses, we have held that "[t]he better practice is to cause all witnesses to leave the courtroom and remain out of hearing of witnesses until after each has been called to testify." *Smith v. Commonwealth*, Ky., 556 S.W.2d 670, 675 (1977).

However, Kentucky Rule of Evidence 615, Exclusion of witnesses, which became effective in July 1992, provides:

At the request of a party the court **shall** order witnesses excluded so that they cannot hear the testimony of other witnesses and it may make the order on its

own motion. This rule does not authorize exclusion of:

(1) A party who is a natural person;

(2) An officer or employee of a party which is not a natural person designated as its representative by its a attorney; or

(3) A person whose presence is shown by a party to be essential to the presentation of the party's cause. (emphasis added)

Contrary to the language of RCr 9.48, the use of the word "shall" in KRE 615 makes exclusion mandatory and removes the separation of witnesses from the trial judge's discretion in the absence of one of the enumerated exceptions. That is, a party has a right to the separation· of witnesses upon a timely request.

In *Dillingham v. Commonwealth*, Ky., 995 S.W.2d 377 (1999) *cert. denied.* 528 U.S. 1166, 120 S.Ct. 1186, 145 L.Ed.2d 1092 (2000), we noted that the lead investigator or detective on the case is permitted to sit at counsel table pursuant to subsection (2) of the rule, and that no special showing needs to be made that his or her presence is "essential." *See also Justice v. Commonwealth*, Ky., 987 S.W.2d 306 (1998); *Humble v. Commonwealth*, Ky. App., 887 S.W.2d 567 (1994). Thus, Officer Swafford was authorized to sit at counsel table throughout the trial.

However, it is clear that Gray does not fall within the exceptions set forth in KRE 615, and should not have been permitted to remain in the courtroom during the testimony of the other witnesses. While the trial court's failure to separate the victim was deemed harmless error in *Justice, supra*, we cannot reach the same conclusion in this case.

During his testimony, Officer Swafford gave a detailed explanation of Gray's statement taken the night of the robbery, including the specific events of the robbery and a description of the perpetrators. In addition, Officer Swafford testified to the exact height and weight information taken from Appellant's driver's license. Finally, Officer Swafford provided details concerning the photo-lineup from which Gray identified Appellant.

We must agree with Appellant that by the time Gray took the stand, his memory was completely refreshed as to the details of the robbery and the description of the perpetrators. Since Gray was the only witness to the robbery that testified at trial, his overall credibility was crucial to the Commonwealth's case. As such, he should not have been permitted to hear the testimony of the Commonwealth's other witnesses. The trial court erred in failing to separate Gray.

## II.

During the testimony of Officer Swafford, defense counsel discovered that the Commonwealth had failed to produce the notes Officer Swafford took during the investigation and witness interviews. The trial court ordered the Commonwealth to immediately copy the notes and provide them to defense counsel. In reviewing the notes later that day, defense counsel discovered that an individual named Fay Hopper informed police that she was on the premises at the time of the robbery. Hopper stated that she believed she could identify the two men that were in the store who committed the crime. Several days after the robbery, Hopper was shown the photo line-up and could not identify Appellant or Ricky Mills. In attempting to locate Hopper, defense counsel learned that she had moved to Covington, Kentucky.

Accordingly, defense counsel moved for a mistrial or, in the alternative, for a continuance to locate and produce Hopper as a witness. The trial court denied both

motions, noting that counsel could question Officer Swafford as to Hopper's failure to identify Appellant from the photo line-up. When questioned about Hopper, Officer Swafford was extremely vague, stating that although Hopper was "around" at the time of the robbery, he did not actually ask her if she witnessed the crime. Officer Swafford stated that Hopper did provide a description of the two men she saw and noted that she thought they were drunk. Nonetheless, Officer Swafford admitted that he did not take a formal statement from Hopper nor did he tape record her interview.

■ Since Appellant maintained that he was somewhere else at the time of the robbery, identity was a crucial issue. The fact that Hopper provided a possible description of the perpetrators but could not identify Appellant from the photo-lineup was of importance to Appellant's case. Officer Swafford's failure to disclose his investigative notes clearly denied the defense the opportunity to review this evidence and interview Hopper prior to trial. By the time defense counsel was made aware of her existence, she was not available. At a minimum, Appellant was entitled to a continuance so that Hopper could be located and possibly testify at trial. The denial of such was error.

### III.

■ During voir dire, a potential juror informed the trial court that he was a former Barbourville city police officer. The juror stated that he could be fair and impartial, and would base any decision solely upon the evidence presented at trial. The following brief colloquy occurred between defense counsel and the juror:

Defense: During the time that you were a Barbourville city police officer, did you ever arrest anybody that you found out later was innocent?

Juror: No, ma'am.

Defense: Everyone that you arrested was guilty?

Juror: As far as I know.

In response to further questioning by the trial court, this juror stated that his answers were based upon his own experiences. He acknowledged that an innocent person could be arrested and that mistakes are sometimes made. The trial court thereafter denied defense counsel's motion to remove the juror for cause.

Appellant concedes that under Kentucky law the mere fact that a person is a current or former police officer is insufficient to warrant removal for cause. *Young v. Commonwealth*, Ky., 50 S.W.3d 148, 163 (2001). Additional evidence of bias must be shown. *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665, 670 (1990) *cert. denied.* 502 U.S. 831, 112 S.Ct. 107, 116 L.Ed.2d 76 (1991). Appellant urges, however, that the juror's responses "regarding the possible innocence of those arrested is disturbing and suggests the underlying belief that most people arrested are, in fact, guilty of the crimes that they are arrested for." We disagree.

■ The juror clearly indicated that his responses were based upon his experiences. The juror did not say that he believed everyone who is arrested is guilty, rather that he had not arrested anyone that he later found out was innocent. Further, he affirmatively stated that he could be fair and impartial. It is within the trial court's discretion to excuse a juror for cause, and great deference is afforded that decision in the absence of an abuse of discretion. No error occurred.

### IV.

Appellant contends that the trial court erred in allotting the defense only nine peremptory challenges, instead of thirteen

as required by RCr 9.40(2), since there were two defendants and one alternate juror. *See Springer v. Commonwealth,* Ky., 998 S.W.2d 439 (1999). Appellant concedes that this issue was not raised in the trial court, but argues that such should be reviewed as palpable error since "[t]he rules specifying the number of peremptory challenges are not mere technicalities, they are substantial rights and are to be fully enforced." *Thomas v. Commonwealth,* Ky., 864 S.W.2d 252, 259 (1993).

Notwithstanding, Appellant fails to recognize that we have repeatedly held that an improper allocation of peremptory challenges is reversible error "if the issue is properly preserved by the adversely affected litigant." *Kentucky Farm Bureau Mutual Insurance Co. v. Cook,* Ky., 590 S.W.2d 875, 877 (1979); *Gabow v. Commonwealth,* Ky., 34 S.W.3d 63 (2000), *cert. denied,* 534 U.S. 832, 122 S.Ct. 80, 151 L.Ed.2d 43 (2001). Since Appellant neither objected to the trial court's interpretation of RCr 9.40 nor offered a contrary interpretation, his claim is not preserved.

### V.

Finally, Appellant argues that he was prejudiced by the trial court's refusal to allow defense counsel to question informant Ronnie Rhodes about whether he was on felony probation at the time he gave his statement to police implicating Appellant and his brother. The trial court sustained the Commonwealth's objection to the question. Appellant argues that the evidence was relevant to prove that Rhodes implicated Appellant and his brother in an attempt to avoid going to prison.

Appellant concedes that Rhodes' testimony on this issue was not offered by avowal. Thus, the issue is not preserved as we are unable to ascertain what Rhodes' response would have been to the question.

However, on retrial of this case, if sufficient evidence is presented to prove, in fact, that Rhodes was on probation at the time he gave his statement to police implicating Appellant, defense counsel is certainly permitted to cross-examine him about his probation status. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

For the reasons set forth herein, we reverse Appellant's convictions and remand the matter to the Knox Circuit Court for a new trial consistent with this opinion.

LAMBERT, C.J., COOPER, KELLER, JOHNSTONE, and STUMBO, J.J. concur.

WINTERSHEIMER, J., dissents in that he would hold that the application of KRE 615 is unfair, and the victim of a crime should be allowed to confront his attacker.