Grant HATFIELD, Jr., Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2006–SC–000333–MR.

Supreme Court of Kentucky.

Jan. 24, 2008.

Rehearing Denied May 22, 2008.

Julia K. Pearson, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Gregory C. Fuchs, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the court by Justice SCOTT.

Appellant, Grant Hatfield, was convicted by a Clay Circuit Court jury, with co-defendants, Eddie Joe Cobb and Brian Collins, of attempted murder, kidnapping, and intimidating a witness. Appellant was sentenced to twenty (20) years imprisonment. He now appeals as a matter of right. Ky. Const. § 110(2)(b). Appellant raises four claims of error: 1) that he was denied a fair trial because a critical witness was allowed to remain in the courtroom throughout the course of the trial; 2) that there was insufficient evidence to support a finding of guilt; 3) that a directed verdict should have been granted as to the kidnapping charge because of the kidnapping exemption statute; and 4) that the lineup presented to the victim was unduly suggestive. Based upon our finding that the kidnapping exemption is applicable, we affirm in part and reverse in part.

## I. BACKGROUND

On the evening of April 6, 2005, near dusk, Natisha Saylor was picked up in an automobile driven by Eugene "Corky" Price while walking home from a convenience store in Clay County, Kentucky. The two individuals drove around the Horse Creek area for some time, picking up and dropping off acquaintances, and making various stops. By all accounts, Saylor and Price were high on cocaine and/or pills. While Saylor was riding with Price, their automobile was followed by a black Monte Carlo occupied by Joe Cobb, Brian Collins, and another woman. At some point, Price stopped, pulled over, and went to talk with the occupants of the Monte Carlo. Price would later testify that he had been offered $1000 to take Saylor somewhere so that she could be "taken care of." Price and Saylor continued on to the Horse Creek Baptist Church, where they stopped.

As Saylor stood in the parking lot of the church talking with Price she noticed the Monte Carlo pull into the lot, park, and Cobb and Collins get out. Appellant ar-

rived at the church shortly thereafter driving a white van. Roy Jarvis, who lived next to the church, testified that he saw "a small white van" along with a dark car in the church lot on the night of April 6, 2005.

Saylor claimed that she was first stuck near the front side of the church, and was forced to go between the church buildings by Appellant, Cobb, and Collins. She claimed that she did not know where Price was as this was transpiring. Saylor stated that she was beaten, cut with a knife, and left for dead by Appellant, Cobb, and Collins. Saylor was subsequently found the following morning by Nadine Jarvis in the garage area behind the church. When paramedics arrived on the scene, they found Saylor alive but in critical condition. She had been severely beaten and cut four or five times about the head and neck leaving her windpipe exposed. She had facial fractures, a cut on her forehead that went to the bone, a collapsed left lung, and broken ribs.

Saylor spent the next thirty-nine days at the University of Kentucky Medical Center and Cardinal Hill Rehabilitation Center receiving treatment for her injuries and brain trauma. The extent to which her brain was injured, the ensuing cognitive defects, and their subsequent effects on Saylor's memory and ability to correctly recall the events of April 6, 2005, served as points of contention during the resulting trial. Saylor offered a number of conflicting identifications as to her attackers throughout the timeline of her recovery. Her identifications were often inconsistent, and the lead officer investigating the case characterized her testimony as having little value. Ultimately, Appellant, Cobb, and Collins were charged with first-degree assault, criminal attempt to commit murder, kidnapping, and intimidating a witness.

Complicating this matter was the connection between Saylor, Appellant, and the co-defendants, with the murder of Steve Collins in October 2004. Steve Collins was allegedly murdered by Appellant's and co-defendants' uncle. Saylor was present at this murder along with another woman named Crystal Hicks. Hicks was subsequently murdered in November 2004.

During trial Appellant was found guilty of all charges, except the first-degree assault charge, which was treated as a lesser-included offense of the attempted murder charge.

## II. ANALYSIS

**A. Appellant was not denied a fair trial or due process of law because victim's grandfather was allowed to remain present in the court room after the prosecutor had invoked the rule on exclusion of witnesses.**

Appellant asserts that his constitutional rights were denied when Saylor's grandfather, Charles Marcum, who was the Clay County Jailor, was permitted to remain in the court room after the prosecution had invoked the rule on exclusion of witnesses. We disagree.

Prior to the commencement of opening statements, the prosecution invoked the rule on exclusion of witnesses. At this time, prosecution requested that Marcum be allowed to remain at the prosecution's table as the victim's family representative. In tandem with this request, the prosecution indicated that Marcum would also be a witness for the Commonwealth. Defense counsel then timely raised an objection, which the trial court overruled.

It is true that until recently there has existed some ambiguity in Kentucky law as to the nature of a judge's discretion in allowing or disallowing partial separation of witnesses at trial. Prior to January 1,

2005, there was a contradiction between the Kentucky Criminal Rules and the Kentucky Rules of Evidence. Under the old RCr 9.48 there existed permissive language which indicated that upon the request of one of the parties, the judge "may exclude" any witness of an adverse party. However, simultaneously, KRE 615 left no room for discernment to the trial judge upon a request for separation, stipulating mandatory exclusion upon a timely request. *See Mills v. Commonwealth,* 95 S.W.3d 838, 841 (Ky.2003). To alleviate this ambiguity, this Court rescinded RCr 9.48 and supplanted KRE 615 as the controlling rule governing separation of witnesses.

KRE 615 states:

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses and it may make the order on its own motion. This rule does not authorize exclusion of:

(1) A party who is a natural person;

(2) An officer or employee of a party which is not a natural person designated as its representative by its attorney; or

(3) A person whose presence is shown by a party to be essential to the presentation of the party's cause.

The thrust of KRE 615 is to ensure that witnesses do not alter their own testimony based on what they hear from other witnesses. *Smith v. Miller,* 127 S.W.3d 644, 646 (Ky.2004). While KRE 615 mandates the separation of witnesses upon the timely request of a party, it creates three exceptions to the separation requirement. Thus, under KRE 615, witness separation is mandatory "in the absence of one of the enumerated exceptions." *Mills,* 95 S.W.3d at 841.

Pertinent to this matter is the third exception to KRE 615 and its treatment within the boundaries of a trial judge's discretion as to partial separation. The third exception operates to codify the discretionary authority of a trial judge under previous case law and RCr 9.48. *See* Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 11.30[3] (4th ed.2003). "Preexisting case law allowed trial judges to order partial separation upon a determination that the presence of a witness was necessary to assist counsel during trial." *Id.* Clearly, the impetus of KRE 615(3) is to validate the longstanding and fundamental practice of separation of witnesses, while upholding the authority of a trial judge to tailor that obligation under her discretion in situations that she deems of merit. Thus, those situations of merit will ultimately be circumstances wherein a witness is essential to effectively further a party's cause.

However, there must be a *showing* that the witness is essential to furthering a party's cause. Whether a witness is essential, is and will remain under the discretion of Kentucky's trial judges. This Court will not attempt to supplant its judgment therein and abdicate a time honored judicial tradition of allowing a trial judge to be the arbiter of the decisions placed before it.

But, that is not to say that a trial court's discretion runs unfettered. In determining whether the trial court has abused its discretion, the following factors may be considered: 1) the relative importance of the violating witness's testimony; 2) the effect on potential testimony by what a potential witness has heard; 3) the reasonableness of a litigant's failure to anticipate the need for separation; and 4) the contribution of a party to rendering a violation. *See* Lawson, *supra* § 11.30[5], at 893.

Here, Appellant claims that KRE 615 was violated at his trial as the victim's

grandfather was allowed to remain at the prosecution's table. KRE 615(3) requires a showing that the witness be essential to a party's cause in order to allow partial separation. The trial court deemed that requirement met, finding no basis for the objection. While Charles Marcum *may* have met this criterion, there was never any showing as required by KRE 615(3). Consequently, the trial court erred in allowing Marcum to remain in the courtroom throughout the trial.

■ This Court has recognized, however, that failure to separate witnesses may be harmless error under the particular circumstances of the case. *See Justice v. Commonwealth,* 987 S.W.2d 306, 315 (Ky. 1999) (rule designed to prevent witnesses from altering their testimony in light of evidence adduced at trial was not violated where there was no valid argument that particular witness had altered his testimony).

Appellant attempts to rely on *Mills* in support of his position. In *Mills,* this Court found that the trial court erred in allowing a robbery witness to remain at the prosecution's table and hear other testimony during the course of the trial. *Id.* However, Appellant's reliance is misguided. In *Mills,* the circumstances were such that the witness in question was permitted to remain at the prosecution's table alongside an additional representative, the lead investigator of the case. *Id.* at 841. Moreover, the witness in *Mills* was the only witness to the robbery and his credibility was of key importance to the outcome. *Id.* That the lone witness to the robbery was allowed to shore up his testimony by hearing the testimony of all the other witnesses amounted to prejudicial error.

■ Contrast the above with Marcum, the victim's grandfather and disputed witness in the present case. Here, Marcum was the singular representative selected to confer with the prosecution during the course of the trial. Such practice has been supported throughout Kentucky jurisprudence. *See Greer v. Commonwealth,* 27 Ky.L.Rptr. 333, 85 S.W. 166, 167 (Ky.1905) (excepting one of the victims of a crime from a separation order and permitting him to remain in the courtroom to aid the prosecuting attorney): *see also Druin v. Commonwealth,* 124 S.W. 856, 858 (Ky. 1910) (separation order not applicable to father of prosecutrix in a statutory rape case); *Speshiots v. Coclanes,* 311 Ky. 547, 224 S.W.2d 653, 655 (1949) (daughter/witness of plaintiff who was not fluent in English allowed to sit with counsel despite separation order).

Here, Marcum's testimony was largely duplicative of other witness testimony and not of an indispensable nature to the outcome of the trial. In the present instance, Marcum was the last of the Commonwealth's eleven witnesses. Marcum's testimony sought to explain Saylor's mental progress throughout her recovery, to suggest her veracity, and attempted to draw a nexus between the families of Appellant, the co-defendants, and the death of Steve Collins.

■ Appellant expresses concerns that Marcum, by remaining present in the courtroom, had the opportunity to tailor his testimony to correlate with prior witnesses. The mere threat or speculation that a witness could tailor testimony is not persuasive of its own accord to warrant prejudicial error. *See United States v. Pulley,* 922 F.2d 1283 (6th Cir.1991) (holding district court's error harmless in allowing the government to have two witness representatives remain in the courtroom despite the separation order and despite the possibility that witness testimony could be tailored). Like *Pulley,* we find that the

"overlap" in Marcum's testimony with the testimony of other witnesses was "inconsequential." *Id.* at 1287. Furthermore, given the cumulative nature of the evidence before the jury, it is unlikely that Marcum's testimony " 'undermined the integrity of the fact finding process.' " *Id.* at 1286 (quoting *United States v. Kosko,* 870 F.2d 162 (4th Cir.1989)). It is the job of the jury to evaluate the credibility of witnesses and lend to that evaluation the relative weight they deem fit. *E.g., Gray v. Commonwealth,* 203 S.W.3d 679, 692 (Ky. 2006).

The error of failing to make an appropriate finding that Marcum's presence was essential to presenting the Commonwealth's case is harmless. Given that Marcum's testimony was largely duplicative and non-essential to the outcome of the trial, of such a nature that it was unlikely to be greatly tainted by the testimony of other witnesses, and that the judge was in the purview of his discretion in allowing Marcum to remain in the courtroom, Appellant's right to a fair trial was not violated.

While failure to require the showing mandated by KRE 615(3) produced no harm in this trial, it is incumbent upon all parties and the trial court to recognize that the rule does not grant an unfettered right to exempt one witness from the longstanding rule of separation of witnesses. When KRE 615(3) is invoked and the party is required to make the necessary showing, the trial court will have an adequate opportunity to consider whether allowing the person to remain in the courtroom would produce a situation similar to that found unacceptable in *Mills.*

**B. Evidence presented at trial was sufficient to reasonably support a finding of guilt as to the charges of attempted murder and intimidating a witness.**

Appellant argues that the evidence presented at trial was insufficient to support his conviction of criminal attempt to commit murder, KRS 506.010, and intimidating a witness in a legal process, KRS 524.040, and therefore his motion for directed verdict should have been granted. We disagree.

The test for this Court on review of directed verdict is "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991) (restating the rule as indicated in *Commonwealth v. Sawhill,* 660 S.W.2d 3 (Ky. 1983)). In determining whether a directed verdict is proper a "trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth." *Id.* Moreover, the trial court "must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony." *Id.* "The court acting as an appellate court cannot … substitute its judgment as to credibility of a witness for that of the trial court and jury.' " *Brewer v. Commonwealth,* 206 S.W.3d 313, 319 (Ky.2006) (quoting *Commonwealth v. Jones,* 880 S.W.2d 544, 545 (Ky.1994)).

Appellant asserts that the evidence presented at trial does not support his conviction for criminal attempt to commit murder or intimidating a witness in a legal process. However, the evidence supports both. Criminal attempt under Chapter 506 of the Kentucky Penal Code is defined as follows.

(1) A person is guilty of criminal attempt to commit a crime when, acting with the kind of culpability otherwise required for commission of the crime, he:

(a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as he believes them to be; or

(b) Intentionally does or omits to do anything which, under the circumstances as he believes them to be, is a substantial step in a course of conduct planned to culminate in his commission of the crime.

(2) Conduct shall not be held to constitute a substantial step under subsection (1)(b) unless it is an act or omission which leaves no reasonable doubt as to the defendant's intention to commit the crime which he is charged with attempting.

(3) A person is guilty of criminal attempt to commit a crime when he engages in conduct intended to aid another person to commit that crime, although the crime is not committed or attempted by the other person, provided that his conduct would establish complicity under KRS 502.020 if the crime were committed by the other person.

(4) A criminal attempt is a:

(a) Class C felony when the crime attempted is a violation of KRS 521.020 or 521.050;

(b) Class B felony when the crime attempted is a Class A felony or capital offense;

(c) Class C felony when the crime attempted is a Class B felony;

(d) Class A misdemeanor when the crime attempted is a Class C or D felony;

(e) Class B misdemeanor when the crime attempted is a misdemeanor.

KRS 506.010.

Intimidating a witness in a legal process is defined under Chapter 524 as:

(1) A person is guilty of intimidating a participant in the legal process when, by use of physical force or a threat directed to a person he believes to be a participant in the legal process, he or she:

(a) Influences, or attempts to influence, the testimony, vote, decision, or opinion of that person;

(b) Induces, or attempts to induce, that person to avoid legal process summoning him or her to testify;

(c) Induces, or attempts to induce, that person to absent himself or herself from an official proceeding to which he has been legally summoned;

(d) Induces, or attempts to induce, that person to withhold a record, document, or other object from an official proceeding;

(e) Induces, or attempts to induce, that person to alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding; or

(f) Hinders, delays, or prevents the communication to a law enforcement officer or judge of information relating to the possible commission of an offense or a violation of conditions of probation, parole or release pending judicial proceedings.

(2) For purposes of this section:

(a) An official proceeding need not be pending or about to be instituted at the time of the offense; and

(b) The testimony, record, document, or other object need not be admissible in evidence or free of a claim of privilege.

(3) Intimidating a participant in the legal process is a Class D felony.

(4) In order for a person to be convicted of a violation of this section, the act

against a participant in the legal process or the immediate family of a participant in the legal process shall be related to the performance of a duty or role played by the participant in the legal process.

KRS 524.040.

▉ Saylor testified at trial that she was taken to the Horse Creek Baptist Church by Corky Price, and that while she was there Appellant and two co-defendants beat her, cut her, and left her for dead. Corky Price testified that he had been offered $1000 to drop Saylor off somewhere and that Appellant's co-defendants were following Price and Saylor in the car behind them on the night of the assault. Further witness testimony offered by the Commonwealth placed the automobiles of Appellant, Price, and co-defendants at the scene of the crime on the night in question.

The Commonwealth also proffered testimony providing a nexus between Appellant, the victim, and the 2004 homicide of Steve Collins. Victim Saylor testified that she and Crystal Hicks were present at the murder of Steve Collins. Saylor testified that she had been questioned by the police concerning the shooting of Steve Collins and that she had been threatened to keep quiet about the matter. Testimony was presented that Crystal Hicks had been murdered in 2004. Appellant is the nephew of one of the alleged murderers of Steve Collins. Further, Charles Marcum, Clay County Jailer and Saylor's grandfather, offered testimony that he had seen Appellant's family visiting the alleged killer of Steve Collins in jail.

Upon this evidence, a jury could reasonably infer that Appellant attempted to murder Saylor and that his attack on Saylor was a means of intimidating her as a witness to the 2004 murder of Steve Collins. While Appellant asserts that the evidence presented at trial was not believable

due to inconsistencies in the testimony presented, it is not the function of this Court to examine the credibility of the witnesses presented at trial. Viewing the testimony put forth in the light most favorable to the Commonwealth, which we are bound to do, and leaving such evaluations of credibility to the purview of the jury, *Benham*, the trial court properly denied Appellant's motion for a directed verdict.

**C. Appellant should have been granted a directed verdict as to the kidnapping charge by virtue of his qualifying for the Kidnapping Exemption statute KRS 509.050.**

Appellant contends that he should have been granted a directed verdict as to the kidnapping charge because of the applicability of the kidnapping exemption statute, KRS 509.050. Specifically, he argues that any interference with Saylor's liberty was incidental to and occurred contemporaneously with the underlying crime of attempted murder. We agree.

Kentucky law dictates that "[a] person is guilty of kidnapping when he unlawfully restrains another person and when his intent is . . . to accomplish or to advance the commission of a felony; or to inflict bodily injury or to terrorize the victim or another . . ." KRS 509.040(1)(b)(c). However, in certain qualified instances within KRS 509.050, kidnapping charges will become inapplicable. KRS 509.050 states:

A person may not be convicted of unlawful imprisonment in the first degree, unlawful imprisonment in the second degree, or kidnapping when his criminal purpose is the commission of an offense defined outside this chapter and his interference with the victim's liberty occurs immediately with and incidental to the commission of that offense, unless the interference exceeds that which is ordinarily incident to commission of the

offense which is the objective of his criminal purpose. The exemption provided by this section is not applicable to a charge of kidnapping that arises from an interference with another's liberty that occurs incidental to the commission of a criminal escape.

In the commentary to KRS 509.050, the drafters pointed to the policy considerations behind the kidnapping exemption statute.

> The provision seeks to express a policy against the use of kidnapping to impose sanctions upon conduct which involves a movement or confinement (of another person) that has no criminological significance to the evil toward which kidnapping is directed. It then provides a flexible standard by which courts are to enforce that policy. Before criminal behavior that is directed toward the completion of robbery, rape, or some other offense can constitute kidnapping, there must be an interference with liberty in excess of that which ordinarily accompanies that offense.

KRS 509.050 (Drafters Commentary 1974). Thus, the drafters expressed a willingness to alleviate the problem of overzealous prosecution, by tacking on kidnapping charges to certain crimes through a hypertechnical application of the statutory language. *See generally Wood v. Commonwealth,* 178 S.W.3d 500 (Ky.2005). The commentary noted that restriction of another's liberty is often an essential or incidental element to the commission of certain violent crimes. KRS 509.050 (Drafters Commentary 1974).

 This Court has applied a three-prong test in determining the applicability of the exemption statute. *See Wood,* 178 S.W.3d at 515 (citing *Griffin v. Commonwealth,* 576 S.W.2d 514 (Ky.1978)). *Wood* outlines the three-pronged approach as follows:

> First, the underlying criminal purpose must be the commission of a crime defined outside of KRS 509. Second, the interference with the victim's liberty must have occurred immediately with or incidental to the commission of the underlying intended crime. Third, the interference with the victim's liberty must not exceed that which is ordinarily incident to the commission of the underlying crime. All three prongs must be satisfied in order for the exemption to apply

*Id.* We will examine each prong in turn.

Firstly, in conjunction with the kidnapping charge, Appellant was charged with attempted murder. Criminal attempt to commit murder is outside of the statute. *See* KRS 506.010; KRS 507.020. Therefore, Appellant satisfies prong one.

 Secondly, to satisfy prong two, the interference with victim's liberty must have been concomitant to the commission of the underlying crime. In *Timmons v. Commonwealth,* 555 S.W.2d 234 (Ky.1977), this Court grappled with the boundaries of the exemption statute.

> [I]f the victim of a crime is going to be restrained of his liberty in order to facilitate its commission, the restraint will have to be close in distance and brief in time in order for the exemption to apply. If the victim is restrained and transported any substantial distance to or from the place at which the crime is committed or to be committed, the offender will be guilty of an unlawful imprisonment offense as well.

*Id.* at 241. Here, the restraint of Saylor was committed incidental to and contemporaneously with the attempt to take her life. Saylor was not restrained to achieve any separate objective. The restraint and interference with Saylor's liberty occurred

as the victim was dragged from the front of the church in the parking lot around to the area behind the church as the assault continued, presumably so that the physical attack on Saylor could be perpetrated in a more clandestine manner. The record indicates no evidence that this movement was for any purpose other than to continue the attempt to take Saylor's life, not to detain or hold the victim. Appellant satisfies prong two of the test.

■ Thirdly, the interference with the victim's liberty must not go beyond that which would normally be incidental to the commission of the underlying crime. The third prong of this test presents a more nebulous consideration, as it is difficult to pin down precisely what is the "appropriate" amount of restraint one would normally use to attempt to take one's life. However, it would appear that the drafters of KRS 509.050 envisioned for prong three to be read in conjunction with prong two of the test. When read together it seems evident that the intent of the latter two prongs is to ensure that the means of restraint effectuated in committing the underlying crime are of such a nature that they are a *part of,* or *incident to,* the act of committing the crime itself and, as such, temporally coincide with the commission of the crime. If the deprivation of liberty segues into a more pronounced, prolonged, or excessive detainment, then such restraint should no longer be within the confines of the exemption statute and the accused should be held separately accountable for those actions. *See Murphy v. Commonwealth,* 50 S.W.3d 173 (Ky.2001) (restraint of 10 hours exceeded that necessary for defendants to commit burglary); *see, e.g., Griffin v. Commonwealth,* 576 S.W.2d 514 (Ky.1978) (restraint of victim one and a half hours after victim dragged from vehicle exceeded what was ordinarily incident to commit sodomy).

The evidence indicates that Saylor was restrained incident to the attempt to take her life and as the assault was committed on her. Saylor was first attacked at the front of the church and was then dragged behind the church where the attack continued. While it is difficult from a moral perspective to quantify such behavior as being appropriate in terms of restraint and interference with liberty, the law demands that justice separate raw emotion from reason. The movement and restraint of Natisha Saylor occurred *in order to* attempt to take her life, and did not go beyond the scope of attempting to achieve that objective. Appellant satisfies prong three of the test and thus qualifies for the kidnapping exemption under KRS 509.050.

Given that Appellant qualified for the exemption, it was unreasonable for the charge to have been placed before the jury. Appellant's motion for a directed verdict on the charge of kidnapping should have been granted, and thus we reverse that conviction.

**D. Appellant's argument that photo lineup was unduly suggestive is un preserved.**

Appellant asserts that the photographic lineup presented to Saylor was unduly suggestive, as the photograph of Appellant had a black arrow pointing to his head. However, this Court will not address this issue as the record does not contain the photographs and the record is absent any motion to suppress.

■ Appellant has a responsibility to present a "complete record" before the Court on appeal. *Steel Technologies, Inc. v. Congleton,* 234 S.W.3d 920, 926 (Ky. 2007). "Matters not disclosed by the record cannot be considered on appeal." *Montgomery v. Koch,* 251 S.W.2d 235, 237 (Ky.1952); *see also Wolpert v. Louisville Gas & Elec. Co.,* 451 S.W.2d 848 (Ky.1970)

(holding that our predecessor court could not review contentions of prejudice before the jury when the only basis for the argument was the Appellant's brief, because review is confined to the record). Appellant may not raise allegations of error on appeal "based entirely on a silent record." *Commonwealth v. Thompson,* 697 S.W.2d 143, 144 (Ky.1985). Further, "[i]t has long been held that, when the complete record is not before the appellate court, that court must assume that the omitted record supports the decision of the trial court." *Id.* at 145.

▮ At trial, Appellant failed to file a motion to suppress the lineup photographs. While a motion was filed and addressed by the court as to the lineup for one of Appellant's co-defendants, Appellant never officially joined in the motion. There was no formal acknowledgement by the court that the motion filed for one defendant was applicable to Appellant. As such, the record is void of objection. Therefore, this Court will not consider Appellant's argument.

### III. CONCLUSION

For the preceding reasons Appellant's convictions for attempted murder and intimidating a witness are affirmed. However, Appellant's conviction for kidnapping is reversed. Thus, we remand this matter back to the Clay Circuit Court for resentencing.

All sitting. All concur.