RENDERED:  FEBRUARY 5, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0876-MR

RICHARD TURPIN                                         APPELLANT


            APPEAL FROM HENDERSON CIRCUIT COURT
v.             HONORABLE KAREN LYNN WILSON, JUDGE
                  ACTION NO. 12-CR-00164


COMMONWEALTH OF KENTUCKY                         APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  DIXON, KRAMER, AND LAMBERT, JUDGES.

KRAMER, JUDGE:  Richard Turpin appeals from an order of the Henderson Circuit Court denying his request for relief pursuant to RCr[1] 11.42.  We affirm.

The factual and procedural history of this matter was set forth in *Turpin v. Commonwealth*, No. 2013-CA-002016-MR, 2015 WL 394202 (Ky. App. Jan. 30, 2015):

---

[1] Kentucky Rule of Criminal Procedure.

On September 11, 2012, a Henderson County grand jury indicted Turpin for rape in the first degree, sodomy in the first degree, kidnapping in the first degree, and being a persistent felony offender (PFO) in the second degree. A trial on these charges took place over three days beginning on September 25, 2013, at which time the following information came to light.

Turpin and the victim met in May of 2012 on an online dating website. As their relationship developed, Turpin and the victim emailed regularly and began to see each other routinely in the weeks leading up to July 21, 2012. On that date, according to plans they made in the days before, Turpin and the victim left Turpin's residence and went to dinner at a local restaurant. After dinner, Turpin left the restaurant without the victim. Turpin testified that this was due to a disagreement with the victim about where to go next. Too inebriated to drive herself, the victim called a friend, Larry Brooks, to drive her to Turpin's home and collect her belongings.

After letting herself into Turpin's home, the victim confronted Turpin for stranding her at the restaurant. As the victim prepared to leave, she asked Turpin for certain personal items that she had asked him to carry with him to the restaurant. Turpin refused. The victim attempted to leave; however, Turpin took her car keys from her. A physical altercation ensued in which Turpin restrained the victim, the victim scratched Turpin's face with her fingernails, and, according to the victim, Turpin threatened to kill her if she did so again. Turpin refuted this, stating that he got "stern" with the victim about driving while intoxicated, and that a "scuffle" occurred only because he tried to stop her from driving home.

Citing her fear of Turpin, the victim stopped physically resisting him as he continued restraining her. The victim stated that Turpin then took her to the bedroom and repeatedly forced her to engage in oral, vaginal, and anal intercourse over the course of several hours. She

complied with Turpin's demands, stating at one point that she "was too afraid to do anything. . . .  I just wanted to get it done . . . and hope to survive."  Throughout the incident, Turpin continued to prevent the victim from leaving the bedroom, or to monitor her movements if she did leave the bedroom.  The victim stated that Turpin even accompanied and observed her in the restroom.

After several hours, the victim feigned chest pain and convinced Turpin to let her leave.  She drove away from the home and once again called Brooks to meet her at a store.  When Brooks arrived, the victim was extremely upset and Brooks called the police.  After the victim told officers what occurred at Turpin's home, an officer transported her to the hospital in Henderson where Dr. Neil Troost conducted a physical examination of her.

Dr. Troost's examination revealed abrasions and bruising to the victim's lip, arms, wrist, and shin.  The victim's urethra was reddened and swollen, a fact which Dr. Troost testified was attributable to "repeated trauma."  Dr. Troost also observed that there was a fresh skin tear to the victim's anus and bruising to her sphincter. He attributed these injuries to forced penetration.

Following the close of proof and deliberations, the jury found Turpin guilty of rape, sodomy, and kidnapping, but not guilty of being a PFO.

*Id*. at *1-2.

This Court affirmed Turpin's conviction.  In August 2015, Turpin filed a *pro se* motion pursuant to RCr 11.42 alleging ineffective assistance of trial counsel.  He filed numerous supplements to the motion and the trial court eventually appointed counsel to Turpin.  Counsel supplemented Turpin's motions and provided two additional grounds for ineffective assistance of trial counsel:

failure to provide adequate advice on jury instructions and effect of cumulative errors. The trial court held an evidentiary hearing and entered an order which denied relief to Turpin after addressing all thirty-nine errors he claimed were committed by his trial counsel. This appeal followed.

We review a trial court's denial of an RCr 11.42 motion as to whether the denial constituted an abuse of that court's discretion. *Bowling v. Commonwealth*, 981 S.W.2d 545, 548 (Ky. 1998). Abuse of discretion is defined as arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

Because the trial court conducted an evidentiary hearing on the motion, its findings of fact will not be set aside unless they are clearly erroneous. CR[2] 52.01; *Adams v. Commonwealth*, 424 S.W.2d 849, 851 (Ky. 1968). Findings of fact are not clearly erroneous if supported by substantial evidence. *Black Motor Co. v. Greene*, 385 S.W.2d 954, 956 (Ky. 1964).

Although Turpin attributed approximately thirty-nine errors to his trial counsel, the only issue on appeal is whether trial counsel provided ineffective assistance due to what Turpin claims was failure to seek lesser included offenses in the jury instructions. Specifically, Turpin argues that he was entitled to

---

[2] Kentucky Rule of Civil Procedure.

instructions for the lesser included offenses of first degree sexual abuse, sexual misconduct, and unlawful imprisonment in the first and second degrees. We disagree.

To prevail under RCr 11.42, the defendant must show that trial counsel's performance was deficient by demonstrating counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). The defendant must also show that the deficient performance prejudiced the defense by demonstrating that counsel's errors were so serious as to deprive the defendant of a fair trial, *i.e.*, a trial whose result is reliable. *Id.* Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. *Id.* The proper standard for attorney performance is that of reasonably effective assistance and the inquiry must be whether counsel's assistance was reasonable considering all of the circumstances. *Id.* A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.* at 689.

We first note that Turpin filed a designation of record pursuant to CR 75.01 that designated, among other items, video recordings from his trial and the evidentiary hearing on his RCr 11.42 motion. However, although the trial recordings are contained in the record, the video recording of the evidentiary hearing that took place on October 10, 2018, is not in the record before us. This is despite the fact Turpin filed a motion to supplement the record with this Court on November 4, 2020, to include the evidentiary hearing, which was granted by order of this Court entered November 30, 2020. Court of Appeals records show that a supplemental compact disc was filed on December 8, 2020. There are four compact discs total in the record before us, none of which contain the evidentiary hearing.[3]

> On appeal, the trial court's findings of fact will not be disturbed unless they are clearly erroneous. CR 52.01. When the evidence is not presented for review, this court is confined to a determination as to whether the pleadings support the judgment and on all issues of fact in dispute we are required to assume that the evidence supports the findings of the lower court.

*McDaniel v. Garrett*, 661 S.W.2d 789, 791 (Ky. App. 1983) (internal citation omitted).

---

[3] One of the compact discs does contain a hearing labeled October 10, 2018, but the recording is only a few seconds in length.

Thus, without the complete record, we must assume its contents support the circuit court's order. *Id.*

This Court has repeatedly held that it is an appellant's responsibility to ensure that we have the complete record for our review.

> In *Hatfield v. Commonwealth*, 250 S.W.3d 590 (Ky. 2008), the Supreme Court of Kentucky discussed the appellant's burden to present a complete record to support his appeal:
>
>> Appellant has a responsibility to present a "complete record" before the Court on appeal. *Steel Technologies, Inc. v. Congleton*, 234 S.W.3d 920, 926 (Ky. 2007). "Matters not disclosed by the record cannot be considered on appeal." *Montgomery v. Koch*, 251 S.W.2d 235, 237 (Ky. 1952); *see also Wolpert v. Louisville Gas & Elec. Co.*, 451 S.W.2d 848 (Ky. 1970) (holding that our predecessor court could not review contentions of prejudice before the jury when the only basis for the argument was the Appellant's brief, because review is confined to the record). Appellant may not raise allegations of error on appeal "based entirely on a silent record." *Commonwealth v. Thompson*, 697 S.W.2d 143, 144 (Ky. 1985). Further, "[i]t has long been held that, when the complete record is not before the appellate court, that court must assume that the omitted record supports the decision of the trial court." *Id.* at 145. *Hatfield*, 250 S.W.3d at 600-01.

*Ray v. Ashland Oil, Inc.*, 389 S.W.3d 140, 145 (Ky. App. 2012); *see also, K.M.E. v. Commonwealth,* 565 S.W.3d 648, 654 (Ky. App. 2018).[4]

Regarding Turpin's allegation that his trial counsel failed to include lesser included offenses in the jury instructions, the trial court made the following findings:

> Fourth, Turpin argues that [trial counsel] erred by failing to request instructions on lesser included offenses. During the evidentiary hearing, [trial counsel] testified that it was his practice to discuss lesser included offenses with clients. Turpin testified that he wanted the standard for a guilty verdict to be high, and so only wanted instructions on the highest offenses. He further stated he may have had "tunnel vision" about lesser included offenses and failed to think about the long term consequences. This is supported by the record at trial. During the trial, [trial counsel] advised the Court that Turpin gave him specific instructions not to include lesser included offenses in the jury instructions. (9/27/2013 9:06 a.m.)
>
> After a review of the record, the Court does not believe that [trial counsel] made an error outside the range of reasonable professional assistance, or that there was any error that affected the ultimate result of the trial. The evidence on one side was that [the victim] was forcibly raped and sodomized; the evidence on the other was that

---

[4] We also note that Turpin filed three separate motions for extensions of time to file his brief with this Court (filed November 27, 2019; January 29, 2020; and January 31, 2020), which were granted. Turpin also sought to supplement the record before this Court on three separate occasions, and each motion was granted. Similarly, the Commonwealth requested extensions of time to file a brief on August 14, 2020, and September 16, 2020. Not only have these motions for extensions of time by both parties caused this case to languish on appeal for nearly two years before it was assigned to this merits panel, but this Court never received the complete record despite at least three motions to supplement the record.

all acts were consensual.  Based on this evidence, there would seem to be little room for lesser included offenses.

Review of the video recording of Turpin's trial supports the trial court's finding that Turpin specifically requested that trial counsel *not* include lesser included offenses in the jury instructions.  Moreover, because we must conclude that the evidentiary hearing that is not in the record before us further supported the trial court's findings, we discern no error.  Turpin failed to meet his burden under RCr 11.42 for ineffective assistance of counsel.  Accordingly, we affirm the Henderson Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Kara Stinson Lewis
LaGrange, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Todd D. Ferguson
Assistant Attorney General
Frankfort, Kentucky