Oscar **ROBINSON**, Appellant,

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

Nos. 2000–CA–002232–MR,
2000–CA–002238–MR.

Court of Appeals of Kentucky.

Aug. 16, 2002.

Case Ordered Published by
Court of Appeals Oct. 4, 2002.

---

Michael J. Curtis, Ashland, KY, for Appellant.

Albert B. Chandler III, Attorney General of Kentucky, William L. Daniel, II, Assistant Attorney General, Frankfort, KY, for Appellee.

Before GUDGEL, JOHNSON, and McANULTY, Judges.

McANULTY, Judge.

Oscar Robinson appeals from an order of the Bath Circuit Court revoking his probation. Robinson contends that the procedural rigors of due process require the Commonwealth to furnish discovery prior to a probation revocation hearing. We agree with the circuit court that Robinson's claim is without merit and thus affirm.

On June 11, 1997, Robinson was convicted in Bath Circuit Court of two counts of first-degree trafficking in a controlled substance. Robinson was sentenced to two consecutive six year sentences in prison. After sentencing, Robinson filed a petition for pre-release probation. On April 15, 1999, the circuit court ordered a Risk Assessment be performed by the Kentucky Department of Corrections and that a recommendation be forwarded to the court and to the Commonwealth's Attorney for consideration regarding Robinson's probation request. A Risk Assessment was filed on May 7, 1999. Subsequently, Robinson was released on probation on July 22, 1999, and was directed to report to the Office of Probation and Parole in Mt. Sterling.

On June 14, 2000, the Commonwealth received a report from Robinson's probation officer that the appellant had tested positive for marijuana and had continually

had trouble meeting his appointments at Pathways. Accordingly, the Commonwealth's Attorney filed a motion to schedule a probation revocation hearing on June 16, 2000. In the time leading up to this hearing, the Commonwealth filed numerous supplemental filings related to Robinson's probation revocation hearing. In response to these filings, Robinson filed a Motion for Discovery on July 26, 2000. Robinson's motion was denied on August 4, 2000. Subsequently, a hearing was held where Robinson's probation was revoked. This appeal followed.

It is well established that due process requires a probation revocation proceeding to comply with the same conditions as are specified in *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972), in the case of a parolee. *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656, 661 (1973). As the United States Supreme Court noted in *Gagnon*, "[d]espite the undoubted minor differences between probation and parole, the commentators have agreed that revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole." *Gagnon* at Footnote 3. As such, our analysis remains unchanged irrespective of whether we are considering the revocation of an individual's probation or parole. That is, the procedural rigors of due process have been satisfied so long as the revocation proceeding complies with the requirements first articulated by *Morrissey*. It is against this conceptual backdrop which we now consider the legal merit of Robinson's claim.

 A probation revocation proceeding "is not a part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey,*

*supra.* Indeed, criminal judicial proceedings and probation revocation hearings are quite dissimilar in both form and substance. As the United States Supreme Court has noted, "[r]evocation [of probation] deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Id.* Indeed, if an individual released on probation has failed to abide by the conditions of his release, "the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[.]" *Morrissey* at 483., 92 S.Ct. 2593 Although the State has a great interest in reincarcerating those individuals who are unable to meet the conditions of their probation, it may not do so without first affording an individual the minimum requirements of due process. *Morrissey* at 488, 92 S.Ct. 2593. As articulated by the United States Supreme Court in *Morrissey* at 489, 92 S.Ct. 2593, these requirements include:

> (a) written notice of the claimed violations of [probation]; (b) disclosure to the [probationer] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation].

While the Morrissey factors are not an exhaustive list, they do establish a floor upon which the State is able to construct its own due process requirements. How-

ever, such a process is not meant to become a second criminal prosecution. Indeed, "the process should be flexible enough to consider evidence ... that would not be admissible in an adversary criminal trial." *Morrissey* at 489, 92 S.Ct. 2593.

While the Commonwealth's courts have not previously addressed the question before us in the present case, this Court has applied *Morrissey* in two other contexts. In *Marshall v. Commonwealth,* Ky.App., 638 S.W.2d 288 (1982), we found that hearsay evidence is admissible in parole revocation proceedings. Similarly, in *Tiryung v. Commonwealth,* Ky.App., 717 S.W.2d 503 (1986), we held that illegally seized evidence is admissible in parole revocation hearings. In both *Marshall* and *Tiryung,* our decision rested on the proposition first articulated in *Morrissey* and subsequently adopted in *Gagnon* that parole and probation revocation hearings are not to be treated as criminal judicial proceedings. To that end, it is clear that in order to comply with the United States Constitution's guarantee of due process, probation revocation hearings must meet the factors first announced in *Morrissey.*

■ Turning to the case *sub judice,* we begin our analysis of this question with a facial review of RCr[1] 7.24. RCr 7.24 outlines, *inter alia,* what evidence the prosecution and defendant must disclose upon the other's request, the timing for discovery requests, and the penalties for a party's failure to comply with a discovery request. The language of RCr 7.24 does not expressly forbid its application to probation revocation hearings. However, it is patently clear from a reading of RCr 7.24 that the rule was designed to govern pretrial discovery in criminal trials. Moreover, the placement of RCr 7.24 within the criminal rules also seems to imply that its

drafters intended RCr 7.24 to be used only in pretrial discovery as the Kentucky Rules of Criminal Procedure are largely arranged in sections which mirror the chronological progression of a criminal matter.

■ Given the spirit of *Morrissey* and the express language of RCr 7.24, we cannot say that the procedural rigors of due process require the Commonwealth to furnish discovery prior to a probation revocation hearing. Robinson contends that discovery is necessary so as to determine how the lab samples were packaged, what type of testing measure was used, what standards were used by the lab in conducting their analysis, and whether the test was based on 100, 50, 20, or 10 nanograms. None of the information sought by Robinson is of such a nature that he would be unable to challenge the Commonwealth's proof. Due process requires only that a probationer be informed of the evidence to be presented against him. *Marshall* at 689 *citing Morrissey* at 489, 92 S.Ct. 2593. Robinson was provided with such information in the case at bar. It is within the sound discretion of the trial court to determine whether the disclosure of the evidence by the Commonwealth was sufficient to meet minimum due process requirements. Based on the disclosure of evidence that was provided by the Commonwealth to Robinson, we cannot say that Robinson was harmed nor his due process rights were violated by the denial of his discovery motion.

For the foregoing reasons, the judgment of the Bath Circuit Court is affirmed.

ALL CONCUR.

---

1. Kentucky Rule of Criminal Procedure.