RENDERED: JULY 2, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1259-MR

BRYANT MAGGARD                                                                            APPELLANT

v.                    APPEAL FROM HARLAN CIRCUIT COURT
                      HONORABLE KENT HENDRICKSON, JUDGE
                      ACTION NO. 13-CR-00503

COMMONWEALTH OF KENTUCKY                                                     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, KRAMER, AND K. THOMPSON, JUDGES.

KRAMER, JUDGE: Bryant Maggard appeals from the Harlan Circuit Court's

decision to revoke his probation. We affirm.

        In November 2013, Maggard was indicted on four counts of rape in

the first degree for having sexual intercourse with a minor who was less than

twelve years of age. The charges lingered until Maggard admitted via a very

lenient plea deal that he had sexual intercourse with the minor victim on four

separate occasions while she was being babysat by Maggard's then girlfriend. In January 2017, he pleaded guilty to amended charges of four counts of rape in the second degree, pursuant to which he received ten years' imprisonment on each count (to be served concurrently), with credit for having served fourteen months in jail, "with the remainder probated, supervised Five (5) years through Conditional Discharge with Probation and Parole and mandatory participation in sex offender treatment program . . . ."[1] The judgment also stated that Maggard's probation "is

---

[1] Though the issue is unfortunately not before us, we have concerns about rendering an opinion without at least some commentary on Maggard's initial eligibility for probation. Rape in the second degree is governed by Kentucky Revised Statute (KRS) 510.050 and is classified as a Class C felony. Because Maggard was convicted of offenses found within KRS Chapter 510, he is deemed a violent offender under KRS 439.3401(1)(f). In turn, KRS 532.047 generally prohibits a violent offender from receiving probation. *See also* 9 LESLIE W. ABRAMSON, KY. PRAC. CRIM. PRAC. & PROC., *Probation and conditional discharge—Eligibility—Violent offender* § 31:134 (6th ed. 2020) ("A person convicted of a violent offense is ineligible for probation. The following felonies are statutorily classified as violent offenses: . . . (6) the commission or attempted commission of a felony sexual offense described in KRS Chapter 510 . . . .") (footnotes omitted); KRS 533.010(2) (generally requiring at sentencing a court to consider probation or conditional discharge "[u]nless the defendant is a violent felon as defined in KRS 439.3401 . . . .").

In addition, KRS 532.045(2) generally prohibits someone convicted of a crime found within KRS Chapter 510 of receiving probation upon the finding of an additional factor, and among the listed factors in subsection (h) is the defendant having had "substantial sexual conduct with a minor under the age of fourteen (14) years . . . ." And to have committed rape in the second degree under KRS 510.050(1), Maggard was over eighteen when he had sexual intercourse "with another person less than fourteen (14) years old" or with "another person who is mentally incapacitated or who is incapable of consent because he or she is an individual with an intellectual disability." The parties have cited to nothing in the record indicating that the victim was mentally incapacitated or had an intellectual disability, but Maggard's original indictment for rape in the first degree does list the victim as being less than twelve. Consequently, it seems that Maggard had sexual conduct with a person who was less than fourteen years old, thus triggering the probation ineligibility language of KRS 532.045(2)(h). Notwithstanding this, the Commonwealth agreed to this plea agreement, and the trial court accepted it.

> A "trial court may impose a sentence of imprisonment (with exceptions not applicable here) only 'after due consideration of the nature and circumstances of the crime and the history, character[,] and condition of the defendant.'" "[A] plea agreement can never be the only factor weighing into the judge's sentencing decision. A plea agreement does not relieve the judge of the statutory directives with respect to sentencing[,] and it does not supplant the judge's duty to make an independent determination of the appropriate

-2-

also subject to [his] compliance with the Conditions of Supervised Probation" attached to the judgment. *Id.* Among the terms of supervised probation in the document attached to the judgment was one requiring Maggard to "[u]ndergo such substance abuse, mental health, or other treatment as directed by the Court or by the probation officer . . . ." Although not attached to the judgment, in January 2017 Maggard signed a Probation and Parole checklist form which required him to, among other things, "attend, participate, and successfully complete a Sex Offender Treatment Program [SOTP]."

Maggard enrolled in the SOTP through the Kentucky Department of Corrections in April 2017, but issues soon arose. Participants in that SOTP sign a document setting forth numerous conditions, among which are to have no contact with minors without any qualifications; to attend scheduled counseling sessions; and to contact the clinician at least weekly. Under the terms of the SOTP agreement, two or more unexcused absences within a ninety-day period can result

---

sentence." And "a trial court abuses its discretion by automatically accepting or rejecting a guilty plea without first making the particularized and case-specific determinations that the plea is legally permissible and, considering all the underlying facts and circumstances, appropriate for the offense(s) in question."

*Commonwealth v. Derringer*, 386 S.W.3d 123, 130-31 (Ky. 2012) (internal footnotes and citations omitted).

We rely on the documents in the official court record for our evaluation of the underlying charges to question why Maggard received probation in the first place. Certainly, we are constrained from reviewing the matter. We add this commentary for the sake of clarity to note that we cannot rectify on the record the trial court's granting probation on a guilty plea to rape in the second degree.

in dismissal from the program. In May 2017, the Commonwealth sought to revoke Maggard's probation after he was dismissed from the SOTP after being seen near a minor child. However, after an evidentiary hearing, the trial court declined to revoke Maggard's probation. The court found that Maggard "violated the terms of his probation by coming into proximity with a minor child" but the "undisputed testimony was that the child was being held by an adult woman (presumably the child's mother) at the time of the encounter, which greatly reduced any threat to the child, and other testimony shed doubt on [Maggard's] intent regarding the encounter." Instead of revocation, the court imposed the time Maggard had spent in jail during those revocation proceedings as a lesser sanction.

Maggard was then readmitted into the SOTP. By all accounts, he was a willing and active participant in the program for the next two-plus years. However, in February 2020, the Commonwealth again moved to revoke Maggard's probation because he had been terminated from the SOTP in January 2020 for excessive absences and for testing positive for a controlled substance. The Commonwealth eventually withdrew Maggard's usage of a controlled substance as a basis for revocation after learning that the substance had been prescribed by a physician. A final revocation hearing was held centered on Maggard's dismissal from the SOTP (via Zoom, due to the COVID-19 pandemic) in early August 2020.

At the hearing, the key witness was Amy Long, the SOTP clinician who had been working with Maggard. Long testified that Maggard had been a model SOTP participant until around the summer of 2019, when he began to frequently miss group meetings. Maggard last attended a group SOTP session in July 2019 but still called Long on the telephone regularly. Because Maggard's absences were primarily due to conflicting doctor's appointments, Long had initially deemed them excused. But in a telephone call in November 2019, Maggard admitted to Long that he had been scheduling doctor's appointments so he could miss group SOTP sessions. By the end of 2019, Maggard's contact with Long diminished. In January 2020, Long told Maggard that she and his probation officer wanted to speak with Maggard at the group meeting scheduled for the next day, but Maggard did not attend that meeting. That absence was his third *unexcused* absence so he was terminated from the SOTP. According to the policies of the SOTP, a person cannot be readmitted into the SOTP after being terminated twice; hence, due to Maggard's own conduct, he became ineligible for readmittance. According to Long, Maggard had also fallen behind in completing his tasks work, had regressed in his ownership of his sexual offenses, and had been dishonest to her.

Immediately after Long finished testifying, which was roughly seventy minutes after the hearing began – and as Maggard maintains in his brief –

the judge appeared to be visibly agitated and peremptorily ended the hearing. Maggard's counsel unavailingly protested the court's refusal to allow him to present evidence on Maggard's behalf. Several days later, the court ordered the hearing to be resumed later in August 2020.[2] Unfortunately, as we will later discuss, the video of the substantive portion of that second phase of the hearing is not in the record before us, though it appears uncontested that the only witness who testified on that date was Maggard's sister. Instead, the only record of that second phase of the hearing in the appellate record consists of about three minutes of footage, during which only the judge is visible or audible. That footage mainly depicts the judge urging the other participants to adjust their Zoom settings so they could be seen and heard. In short, the record presented to us contains no footage of any testimony, arguments of counsel, or any oral remarks or rulings made by the court at the second phase of the hearing.

---

[2] We are cognizant that the dedicated, hard-working trial courts across our Commonwealth consistently maintain heavy dockets, a situation likely exacerbated by the COVID-19 pandemic. Also, of course, "[a] trial court clearly has the power to impose reasonable time limits on the trial of both civil and criminal cases in the exercise of its reasonable discretion . . . ." *Hicks v. Commonwealth*, 805 S.W.2d 144, 151 (Ky. App. 1990). However, the court cannot deny a defendant the right to present *any* evidence on his or her behalf. *See, e.g.*, *Robinson v. Commonwealth*, 86 S.W.3d 54, 56 (Ky. App. 2002) (noting that due process affords a defendant at a probation revocation hearing the right to, among other things "be heard in person and to present witnesses and documentary evidence . . . .") (internal quotation marks and citation omitted). Fortunately, herein, the error was corrected prior to the entry of the order of revocation.

Soon after the second phase of the hearing concluded, the trial court issued an order revoking Maggard's probation. The court summarized Long's testimony, including Maggard's having missed group sessions and general regression in program participation. The court also briefly noted that Maggard's sister had testified but "[s]he added little." After deeming the decision "difficult[,]" the court found in relevant part as follows:

> However, completing SOTP is a condition of his probation, and the evidence establishes that he [Maggard] intentionally stopped participating in the program by mid-July 2019, and did so notwithstanding Amy Long's intense efforts to persuade him to continue in it. He will not be readmitted a third time. Although his lawyer argued for private treatment, the evidence establishes that Maggard does not want treatment. And as further evidence of that the court notes the January 24, 2020 Termination and Discharge report terminating Maggard from SOTP, which states at the end:
>
>> He may appeal this decision within ten (10) calendar days from the receipt of this notice and will receive a written response from the director or designee within 21 days of receipt of appeal.
>
> After a lengthy hearing, there was not the slightest suggestion that Maggard appealed his second termination from the program. Given that, there is no reason to believe he would engage in private treatment, assuming it is available. Failure to successfully complete the sexual offender treatment program constitutes grounds for the revocation of probation, KRS 532.045(6), and Maggard is considered a "heightened risk to reoffend."

> The Court finds the Defendant, Bryant Maggard, abandoned the most critical condition of his probation, completion of the Sex Offender Treatment Program. The Court finds that Probation and Parole Social Services Clinician Amy Long went the extra mile with Maggard to help him while he was doing well in the program and then to urge him to remain in the program when he stopped participating. The Court finds that Maggard's leaving the program, along with the finality of that decision, removed Probation and Parole's ability to supervise him under the terms of his probation and that as a sex offender who has rejected treatment, that his failure to comply with the conditions of his supervision constitutes a significant risk to the community at large and he cannot be appropriately managed in the community.

The court thus revoked Maggard's probation and remanded him to the Department of Corrections to begin serving the remainder of his ten-year sentence. Maggard then filed this appeal.

Maggard raises three interconnected arguments. First, he contends the court erred by concluding he would not submit to private counseling. Second, he contends the court failed to make sufficient findings, particularly as to why revocation was proper versus imposition of a lesser sanction. Finally, he contends the court should have imposed a lesser sanction short of revocation. We review a trial court's decision to revoke probation under the abuse of discretion standard. *Commonwealth v. Andrews*, 448 S.W.3d 773, 780 (Ky. 2014).

Before we resolve the merits of the revocation, we must address the impact of the lack of video footage of the second phase of the revocation hearing.

-8-

We note that Maggard filed a designation of record pursuant to Kentucky Rule of Civil Procedure (CR) 75.01 that included the second phase of the revocation hearing. However, the video of the substantive portion of that phase of the hearing does not appear in the record before us. Maggard's counsel certified on the cover of his brief that he did not withdraw the record from the Clerk's office; thus, he did not take all possible steps to try to ensure that we received the complete video record.

On appeal, the trial court's findings of fact will not be disturbed unless they are clearly erroneous. CR 52.01. "When the evidence is not presented for review, this court is confined to a determination as to whether the pleadings support the judgment and on all issues of fact in dispute we are required to assume that the evidence supports the findings of the lower court." *McDaniel v. Garrett*, 661 S.W.2d 789, 791 (Ky. App. 1983). Thus, we must assume the contents of the second phase of the hearing support the trial court's decision. *Id.*

We have repeatedly held that it is an appellant's responsibility to ensure that we have the complete record for our review. And, litigants have repeatedly been reminded of this.

> In *Hatfield v. Commonwealth*, 250 S.W.3d 590 [600-02] (Ky. 2008), the Supreme Court of Kentucky discussed the appellant's burden to present a complete record to support his appeal:

Appellant has a responsibility to present a "complete record" before the Court on appeal. *Steel Technologies, Inc. v. Congleton*, 234 S.W.3d 920, 926 (Ky. 2007) [abrogated on other grounds by *Osborne v. Keeney*, 399 S.W.3d 1 (Ky. 2012)]. "Matters not disclosed by the record cannot be considered on appeal." *Montgomery v. Koch*, 251 S.W.2d 235, 237 (Ky. 1952); *see also Wolpert v. Louisville Gas & Elec. Co.*, 451 S.W.2d 848 (Ky. 1970) (holding that our predecessor court could not review contentions of prejudice before the jury when the only basis for the argument was the Appellant's brief, because review is confined to the record). Appellant may not raise allegations of error on appeal "based entirely on a silent record." *Commonwealth v. Thompson*, 697 S.W.2d 143, 144 (Ky. 1985). Further, "[i]t has long been held that, when the complete record is not before the appellate court, that court must assume that the omitted record supports the decision of the trial court." *Id.* at 145.

*Ray v. Ashland Oil, Inc.*, 389 S.W.3d 140, 145 (Ky. App. 2012); *see also K.M.E. v. Commonwealth*, 565 S.W.3d 648, 654 (Ky. App. 2018).

In any event, the crux of the trial court's conclusions stemmed from Long's testimony, which occurred at the first phase of the hearing. Nonetheless, we must presume that the proceedings at the second phase of the hearing generally support the trial court's findings and conclusions.

We must address one final prefatory concern before delving into the merits. CR 76.12(4)(c)(v) provides that an appellant's brief "shall contain at the

-10-

beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." Maggard's brief contains no preservation statement for any of his arguments. However, the trial court's revocation decision states that Maggard's counsel "argued for private treatment . . . ." *Leniently*, we accept that in the trial court Maggard made the same basic arguments he makes here regarding private treatment. We will thus review the issues on the merits, with the constraints of the limited record before us, with the assumption they were preserved but strongly caution counsel to comply scrupulously with the rules governing appellate practice in the future.

Having cleared away the procedural underbrush, we now turn to the merits of the trial court's decision to revoke Maggard's probation. We begin with his assertion that the trial court erred by holding that he would not submit to private counseling. Maggard cites to nothing definitive about the availability of private treatment (*e.g.*, how many providers in the vicinity of his residence offered appropriate sex offender treatment, whether those provider(s) were accepting new patients, whether he could have afforded private treatment, *etc.*). In any event, Maggard points to no authority which would have required the trial court to order him to undergo private therapy in lieu of revocation.

Perhaps more importantly is that Maggard is a victim of his own making, and nothing compels the trial court to overlook the fact that Maggard is seeking private treatment because he is no longer eligible for SOTP. Maggard took improper acts, or failed to take required acts, which twice resulted in his dismissal from the SOTP program, chief among them being his intentional failure to participate fully and appropriately in therapy. Consequently, it was reasonable from Maggard's actions and inactions for the court to infer that he did not desire treatment. Maggard certainly did not participate consistently with the terms of his probation when he had the opportunity to do so. Thus, there was no error in the trial court's refusal to give Maggard another bite at the probation apple after his prior failures to fulfill the terms of his probation, particularly in light of the serious nature of his four sexual assault charges against a minor, less than twelve years old.

Next, we disagree with Maggard's contention that the trial court should have imposed private therapy as a lesser sanction. First, we do not equate private therapy with a sanction. *See, e.g.*, *Kaletch v. Commonwealth*, 396 S.W.3d 324, 327 n.3 (Ky. App. 2013) ("Although Kaletch's probation officer referred to these as 'sanctions,' we fail to see any punitive aspect to requiring Kaletch to meet with the social services clinician, who then tried to help Kaletch get treatment for his cocaine addiction by requiring him to attend the Narcotics Anonymous

meetings. Narcotics Anonymous meetings are intended to be helpful and beneficial; therefore, we fail to see how they are a punitive sanction.").

Further, we strongly disagree with Maggard's core argument that the trial court *had* to impose a sanction short of revocation under the facts of this case. As we have held, the decision to revoke probation is within a trial court's discretion as there is no law which "*requires* the trial court to impose lesser sanctions prior to revoking probation. Hence, the statute did not require the present trial court to impose a lesser sanction on [Maggard]." *McClure v. Commonwealth*, 457 S.W.3d 728, 732 (Ky. App. 2015). In other words, the trial court here *could* have imposed a lesser sanction than revocation if the facts of the case supported it, but it did not *have* to do so under the facts of this case.

It is unquestioned that Maggard failed to comply with the terms of his probation by persistently failing to participate appropriately in the SOTP program. It is also unquestioned that the trial court had previously found Maggard to have violated the terms of his probation but had exercised leniency and declined to revoke his probation. Under those facts, we perceive no abuse of discretion in the trial court's determination that revocation was the appropriate sanction.

Next, we disagree with Maggard's contention that the court's findings were insufficient. KRS 439.3106 "require[s] trial courts 'to consider whether a probationer's failure to abide by a condition of supervision constitute[d] a

significant risk to prior victims or the community at large, and whether the probationer cannot be managed in the community . . . .'" *McClure*, 457 S.W.3d at 731 (quoting *Andrews*, 448 S.W.3d at 776). Though it did so without providing significant elaboration, the trial court made those two findings. The trial court found that as a sexual offender who was uncooperative toward ordered treatment, Maggard posed a significant danger to the community and could not be managed in the community at large.

And, those findings are supported by the evidence. Maggard's stubborn refusal to participate in treatment gave rise to the reasonable inference that he generally was unwilling to receive treatment. It is logical to conclude that the community is at risk when an untreated sex offender is in its midst, particularly one who repeatedly preyed on a child under the age of twelve. It is equally logical to conclude that Maggard's unwillingness to participate in required therapy also made it extremely difficult for the Probation and Parole department to manage him appropriately in the community.

Finally, Maggard argues he is entitled to relief because of the trial court's odd reliance upon his failure to appeal his dismissal from the SOTP program within the Department of Corrections. Long sent Maggard's probation officer—not Maggard himself, curiously—a letter explaining why he had been dismissed a second time from the SOTP program. That letter stated that Maggard

could appeal his dismissal within the Department of Corrections. The trial court noted that the dismissal letter notified Maggard of his ability to appeal but "there was not the slightest suggestion that Maggard appealed his second termination from the program. Given that, there is no reason to believe he would engage in private treatment, assuming it is available."

We do not see a direct, obvious correlation between Maggard's failure to appeal his termination within the Department of Corrections and his unwillingness to receive private treatment. The court did not explain how Maggard's failure to file an internal appeal within the Department of Corrections somehow means there "is no reason to believe" he would accept *any* therapy offered by *any* provider. Indeed, Maggard apparently failed to appeal his first dismissal from the SOTP program, but the same trial court did not deem that lack of appeal to be a basis for revocation. Moreover, given Long's testimony about Maggard's having intentionally missed group therapy sessions and having been dishonest with her, any appeal within the Department of Corrections would almost certainly have been fruitless. However, the trial court's reliance on the lack of appeal is, at absolute most, a harmless error because as we have discussed, there was other ample evidence to support revocation.

In sum, there was unrebutted testimony that Maggard intentionally failed to satisfy the terms of his probation when he stopped complying with his

treatment obligations.  Thus, we discern no abuse of discretion in the trial court's decision to revoke Maggard's probation.

For the foregoing reasons, the Harlan Circuit Court's order revoking Bryant Maggard's probation is affirmed.

ALL CONCUR.


BRIEF FOR APPELLANT:

Russell D. Alred
Harlan, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky