Cory WILSON, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2011–CA–002157–MR.

Court of Appeals of Kentucky.

Dec. 7, 2012.

Cicely J. Lambert, Assistant Appellate Defender, Louisville, KY, for appellant.

Jack Conway, Attorney General of Kentucky, J. Hays Lawson, Assistant Attorney General, Frankfort, KY, for appellee.

Before COMBS, LAMBERT, and NICKELL, Judges.

## OPINION

LAMBERT, Judge:

Cory Wilson appeals from a judgment following a jury trial, in which he was found guilty of trafficking in a controlled substance, first degree (cocaine); tampering with physical evidence; fleeing or evading police, first degree (pedestrian); resisting arrest; trafficking in a controlled substance (marijuana less than 8 ounces); and criminal trespass, and he was sentenced to concurrent terms of imprisonment totaling ten years and a fine of $250.00. Because we agree with Wilson that the trial court should have granted a continuance based on the Commonwealth's failure to produce a requested discovery document the trial court had ordered it to produce, we vacate the judgment and remand for a new trial.

On August 18, 2010, Louisville Metro Police Department officers Benjamin Shelton and Arcadio Hidrogo started their shifts at 11:00 p.m. Officer Shelton testified that since he was driving a marked police "pool" car, his routine included checking the car's interior (including pulling out the back bench seat) for weapons, drugs, and anything left in the car by the previous officer. Around 1:00 a.m., with Officer Hidrogo in the lead car, the officers were patrolling the posted "no trespassing" Turtle Creek apartments on Goldsmith Lane when they saw the appellant, Wilson, walking and decided to ascertain if he was at the complex legally. When Officer Hidrogo stopped the car, Wilson ran. The officers took separate paths around the apartment buildings, meeting up next to a building entrance where they smelled a strong odor of marijuana coming from inside the foyer entrance doors; they located Wilson inside behind a group of three men. While Officer Shelton testified that the officers told everyone to sit down and show their hands, Officer Hidrogo testified that they asked everyone to step outside. Both officers agreed that Wilson exited the building past the officers using the group of three men as a screen.

Officer Hidrogo ordered Wilson to stop and the officers gave chase with Officer Shelton in the lead. Wilson ran around a dumpster and swung a grocery cart behind him, tripping Officer Shelton. Officer Hidrogo failed to mention the grocery cart incident in his uniform citation narrative.

During the chase, the parties had to cross Goldsmith Lane, which was usually a highly travelled road. However, the testimony was that on this occasion, the parties did not encounter any traffic and they all traveled safely across. Once across Goldsmith Lane, the officers followed Wilson between parked cars until Wilson was apprehended as he slipped while tossing baggies of marijuana out of his pocket.

In spite of his initial reluctance in giving his hands to the officers, Wilson was handcuffed behind his back without incident. Narcotics Detective Steve Healy testified that many times cocaine is concealed in the buttocks area, and Detective Grant Riggs testified that officers are trained to per-

form a search incident to arrest, which includes searching between the suspect's legs and the front and back area, and "absolutely" a pat down for anything that could be hidden outside the anus. Officer Hidrogo's search of Wilson's body and waistband pursuant to the training outlined by Detective Riggs revealed nothing; his search of the pockets of Wilson's long shorts revealed baggies of marijuana. Additionally, a search of the area and the three men from the apartment building foyer revealed nothing.

Officer Shelton placed Wilson, handcuffed with his hands behind his back, in the rear seat on the passenger side of Shelton's "pool" car. Officer Shelton testified that when he placed Wilson in the car, he did not see anything sticking out of the rear seat. Wilson stayed alone in the car for ten minutes with the doors and windows closed and with no access to the outside before being transferred to Officer Hidrogo's car. During the transfer, Officer Shelton noticed a small piece of sandwich baggie stuck in the rear bench seat where Wilson had been seated. The baggie contained a piece of plastic similar to the corner of a baggie along with a white cylindrical substance.

Officer Hidrogo stated that the substance in the baggies taken from Wilson's pockets smelled like marijuana, but it was not tested; the white substance found in the back of Officer Shelton's pool car tested to be a 22.79 gram rock of cocaine. At trial Detective Healy testified that the marijuana was packaged for small-time individual sales of $15.00 to $35.00 each, and the walnut-sized piece of crack cocaine, in contrast, appeared to have been recently manufactured and possibly purchased for $1,200.00 to $1,500.00 from a "higher" type dealer for either potential transfer or sale to another dealer, or to be broken down into ¼ to .3 gram packages for individual sales. According to Detective Healy, a dealer usually either has a large quantity of money or a large quantity of drugs; a lot of drugs mean the profits have been used to buy drugs, while a lot of money means the drugs have not yet been bought. Additionally, Detective Healy explained that the street level dealers just sell and therefore do not possess drug paraphernalia. According to Detective Healy, officers search the buttocks area knowing that drugs are often hidden there, but an officer may miss narcotics concealed in the buttocks area because he is doing an external pat down search for weapons and not a more thorough search for narcotics. Finally, Detective Healy testified that a suspect can pull something out of the back of his pants without a whole lot of movement, even with his hands handcuffed behind his back.

One month prior to trial, Wilson's defense counsel requested discovery in the form of in-car audio/video from both police "pool" cars and exculpatory evidence in the form of a list of any individuals who were in Officer Shelton's squad car within the twenty-four hour period preceding Wilson's arrest. The trial court ordered the Commonwealth to answer the request in writing within ten days. The day after the court's deadline, with no response from the Commonwealth, defense counsel filed a Kentucky Rule of Criminal Procedure (RCr) 7.24(9) motion to dismiss. The trial court, *sua sponte,* gave the Commonwealth three additional days to comply, excusing the prosecutor's failure to comply with the court's order as due to having "a lot of back to back trials."

Nineteen days after the court's original deadline and closing in on the trial date, the Commonwealth faxed defense counsel a response indicating that it had no knowledge of the identity and charges of the information requested; that defense coun-

sel was equally situated regarding access to that information; and provided defense counsel with a list of Officer Shelton's arrests from Courtnet. The day before trial, the prosecutor informed defense counsel whom he saw in another court division that there were no in-car audio/videos.

On the day of trial, defense counsel filed a motion to dismiss the indictment based on the Commonwealth's failure to comply with the court's order. Defense counsel noted that the Courtnet information provided by the Commonwealth was not in compliance, as it did not provide a list of persons in Officer Shelton's "pool" car in the twenty-four hours before Wilson's arrest. Defense counsel alternatively requested a hearing in which Officer Shelton could testify and answer questions about why the Commonwealth had failed to seek the information from Officer Shelton, despite his response that there was a "pool" car log available.

The Commonwealth responded, arguing that it had complied with the three-day extension period, even though it had not. The Commonwealth further argued that it had complied with a request for copies of the uniform citations although defense counsel could have done it herself; it could not respond more timely to the in-car audio/video request because its paralegal was out; it did not have to turn over anything in response to the request for the "pool" car list because it was not exculpatory; Officer Shelton was mistaken when he said the Commonwealth had asked him about the log the day before trial because the Commonwealth had not done so; and alternatively, defense counsel could get the log herself through an open records request.

In ruling on defense counsel's motion to dismiss or for a continuance, the trial court held that the above issues were proper questions for cross-examination or that defense counsel could subpoena Officer Shelton, but found that the Commonwealth had complied with the court's order. Additionally, the trial court noted that the log was not "that important to this case or to the overall case as to whether or not [the defendant] committed these acts[.]" After defense counsel argued that it was prejudicial to the defense to go forward without the log, the trial court denied the motions to dismiss and continue; but the denial of the motion to continue was contingent upon the log being made available to defense counsel. One hour later, and within minutes of voir dire, the Commonwealth provided the log. Defense counsel argued that she could not simultaneously investigate the log, which showed that the "pool" car had been used by three officers the day before Wilson was arrested, and ethically defend Wilson. Her continued request for a continuance, however, was impossible because the Commonwealth's main witness, Officer Shelton, was only available to testify that day. Thus, the trial proceeded.

After the jury found Wilson guilty of the above offenses, he accepted the Commonwealth's penalty offer of concurrent respective sentences of ten years and five years on the felonies, twelve months on each misdemeanor, and a $250.00 fine on the violation. The trial court sentenced Wilson to a total of ten years and imposed court costs of $130.00. This timely appeal follows.

■ Wilson's first argument on appeal is that the trial court abused its discretion by denying his motion for a continuance due to the Commonwealth's delayed production of the police "pool" car log until moments before the trial began. In support of this argument, Wilson argues that a discovery violation justifies setting aside a conviction if there exists a reasonable probability that had the evidence been dis-

closed at trial, the result would have been different. *Weaver v. Commonwealth,* 955 S.W.2d 722, 725–26 (Ky.1997) (citing *Wood v. Bartholomew,* 516 U.S. 1, 116 S.Ct. 7, 133 L.Ed.2d 1 (1995)).

The Commonwealth counters that Officer Shelton's statements about his routine checks of the "pool" cars he is assigned, including his checks for weapons, drugs, or other items and his testimony about his specific checks of this "pool" car at issue in this case are conclusive and are indicative that Wilson suffered no prejudice by not being able to investigate the use log for exculpatory evidence.

▮ We agree with Wilson that an officer's statement that he routinely checks his patrol or pool cars for maintenance, safety, and the existence of any weapons or drugs is not conclusive evidence that the officer properly checked the patrol or pool car at issue in the instant case. Particularly, we agree with Wilson's arguments that Officer Hidrogo and Officer Shelton had conflicting testimony about the events leading to Wilson's arrest. Thus, Officer Shelton's credibility was at issue in this case, and it was prejudicial to Wilson for his counsel not to be able to investigate the "pool" car's use log, despite her attempts to obtain a copy of it well before trial. We find this particularly persuasive in light of the fact that no in-car audio/videos were available. The trial court's denial of a continuance after the Commonwealth's continued delays in producing the evidence was an abuse of discretion, as there was a reasonable probability that the outcome of Wilson's trial would have been different had he been able to present evidence that prior occupants of the "pool" car left the drugs inside. At the very least, Wilson should have been afforded time to develop an argument concerning such a theory, and the Commonwealth's refusal to provide the court-ordered discovery prevented him from doing so.

Because our ruling on this issue is determinative of the case in its entirety, we do not need to consider the other arguments Wilson makes in his brief.

Based on the above finding of an abuse of discretion, we vacate the judgment of the Jefferson Circuit Court and remand this case to the court for a new trial.

ALL CONCUR.