# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: MARCH 20, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0517-MR

RODERICK WHITNEY                                                      APPELLANT

V.
ON APPEAL FROM HENRY CIRCUIT COURT
HONORABLE JERRY CROSBY, II, JUDGE
NO. 18-CR-00155

COMMONWEALTH OF KENTUCKY                                              APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

A Henry County jury convicted Roderick Whitney ("Whitney") of kidnapping of a minor, two counts of unlawful imprisonment, and first-degree sexual abuse of a victim under twelve years of age. In the penalty phase, he was found to be a persistent felony offender ("PFO") in the second degree. He appeals to this Court as a matter of right. Ky. Const. § 110(2)(b). Whitney argues that the trial court erred by denying his motion to continue his trial. Finding no abuse of discretion, we affirm.

## BACKGROUND

On July 25, 2018, Whitney helped to clean T.G.'s mother's apartment.[1] T.G., who was then ten years old, and two of her friends, were also present in

---

[1] Whitney lived nearby and had recently developed a friendship with T.G.'s grandfather who also lived in the apartment.

the apartment. T.G., who was then ten years old, and two of her friends,[2] were also present in the apartment. Whitney told the three girls he would pay them to help clean the apartment. They did so. Later, when the girls helped carry cleaning supplies to Whitney's vehicle, he demanded they get in his car. When they refused, he grabbed one of the sisters by the wrist and forced her inside. The other two girls were frightened and complied with his demand. Whitney drove them a short distance to his house.

Once inside his home, Whitney took T.G. to his bedroom to fold laundry. After completing the task, he took her to the living room and told her to lie on her stomach to clean the carpet with a toothbrush, soap, and water. Whitney got on top of T.G., placing his hands over hers, and claimed he was demonstrating how to clean. He pressed himself against her buttocks and rubbed back and forth for approximately fifteen minutes.

The sisters were cleaning nearby when they saw T.G. silently mouthing for help. One sister told Whitney to get off T.G. Whitney eventually moved away. He told the girls that if anyone asked questions, they should say all they did was clean his house. When she returned to her apartment complex, T.G. disclosed Whitney's actions to a neighbor, David Kidd ("Kidd"). Kidd then told T.G.'s mother about the incident.

In November 2018, Whitney was indicted by a Henry County grand jury on three counts of kidnapping of a minor, first-degree sexual abuse of a victim

---

[2] Both friends are sisters with the same initials, A.C. To avoid confusion, we refer to them collectively as "the sisters."

under twelve years of age, second-degree unlawful imprisonment,[3] violation of registered sex offender school restrictions,[4] and being a second-degree PFO.

Whitney was tried in August 2023. During jury selection, the Commonwealth disclosed a 2020 disciplinary report against the original investigating officer, John Bailey ("Officer Bailey") of the Eminence Police Department.[5] Officer Bailey was suspended because of five substantiated violations of policies. The report concludes, "Officer Bailey's repeated failure to conform his conduct to the standards established by the Eminence Police Department represents gross inefficiency and puts the Eminence Police Department in a negative light and hurts our professional image." Record ("R") at 624. One violation related to Officer Bailey's investigation in this case. The report states:

> Investigation revealed that Officer Bailey was contacted by the Assistant Commonwealth Attorney to do some follow up investigation in a two-year-old case in which Officer Bailey was the investigating officer. . . . The prosecutor contacted Officer Bailey approximately three weeks prior to trial to make contact and reinterview witnesses.
>
> Officer Bailey had approximately 96 hours of work time to accomplish the assignment. Investigation revealed Officer Bailey made minimal to [no] effort to complete the request. Officer Bailey stated the only course of action he took was to check CourtNet and

---

[3] The trial court dismissed this count of the indictment.

[4] The trial court later severed this count of the indictment.

[5] The Commonwealth was made aware of the report by Major Dudinskie of the Eminence Police Department who was present during voir dire. The Commonwealth's attorney immediately obtained the report and turned it over to defense counsel. Before the trial court, Whitney's counsel did not question the Commonwealth's late discovery of the report or allege the Commonwealth intentionally withheld it.

3

> tried to ask a civilian if she knew the whereabouts of the witnesses. Officer Bailey failed to request assistance from other officers, run common police-type checks on driver's license, etc. The prosecutor even provided Officer Bailey with an address of one witness twice by text. Officer Bailey told the prosecutor to get with Major Dudinskie, which he did. In one-hour Major Dudinskie and Sergeant Parham located all the witnesses, and the interviews were completed by Major Dudinskie the following day.

*Id.* at 623 (cleaned up). Officer Bailey also made false statements to other officers about another agency's involvement in a case unrelated to this case.

Whitney immediately moved for a continuance to allow for an investigation into Officer Bailey's conduct. In denying the motion, the trial court reasoned

> [Officer Bailey] is not the person that is offering the truth of the matter asserted in the Commonwealth's case-in-chief. He is merely the person that investigated, and the allegations come from at least one of these juvenile witnesses –maybe all three of these juvenile witnesses –as to what took place. If he was the person [] that was involved in investigation – he had pulled somebody over and found something on their person or in their vehicle, or something of that nature, I certainly believe that the issue in regard to his credibility would be relevant [] and would cause undue prejudice in regard to your client. I don't think that's the case here, because despite the fact he investigated this matter, the allegations don't come from him. In fact, he can't even testify to the allegations. They will have to testify in regard to their allegations. . . . So I don't see how this causes your client any great prejudice because, number one, you get to use all this information . . . on cross examination, [and] number two, there is no great prejudice to your client because the allegations and statement of the evidence that are going to come in at

4

> trial are not coming in from him. They are coming in from the three ladies who allegedly were present and or were victims in regard to this matter.

Video Record ("VR") 8/7/23 at 15:59:19-16:01:03. The Court also considered the factors in *Snodgrass v. Commonwealth*, 814 S.W.2d 579, 581 (Ky. 1991) (*overruled on other grounds by Lawson v. Commonwealth*, 53 S.W.3d 534 (Ky. 2001)). The court found the delay was not purposeful but denied the motion because of prior continuances; a continuance would be a significant inconvenience to everyone involved, including the jurors who had just been seated, and there was no identifiable prejudice to Whitney.

During its case-in-chief, the Commonwealth presented testimony from T.G., the sisters, T.G.'s mother, the sisters' mother, Major Dudinskie, and Kidd. Despite having been subpoenaed, Officer Bailey did not testify. Dudinskie testified to his investigation in the case.[6] On cross-examination, Whitney's counsel asked him about deficiencies in Officer Bailey's investigation, including his failure to contact witnesses. Counsel also questioned him about the disciplinary action against Officer Bailey and his suspension due, in part, to his actions in this case. Defense counsel also challenged the credibility of the Commonwealth's other witnesses, including the victims.

---

[6] Major Dudinskie was not employed by the Eminence Police Department at the time the investigation was initiated by Officer Bailey. He was hired in 2019 and became involved in this case in 2020.

In his defense, Whitney presented the testimony of A.W., his son.[7] A.W. testified that he lived with his father at the time of the alleged incident and was home all day. He testified that he did not see or hear anyone other than his father in the home.

After deliberation, the jury found Whitney guilty of one count of kidnapping of a minor, two counts of unlawful imprisonment, and first-degree sexual abuse of a victim under twelve years of age. In the penalty phase, the jury found him to be a second-degree PFO. The trial court imposed the jury's recommended sentence of twenty years' imprisonment for kidnapping, which was enhanced to life imprisonment because of Whitney's PFO status.

This appeal followed.

## ANALYSIS

Whitney's sole argument on appeal is that the trial court erred by denying his motion to continue the trial to allow him to investigate Officer Bailey's misconduct. The appropriateness of granting a continuance depends on the "facts and circumstances" of each case. *Parker v. Commonwealth*, 482 S.W.3d 394, 402 (Ky. 2016) (citation omitted). We review a trial court's denial of a motion to continue for abuse of discretion. *Slone v. Commonwealth*, 382 S.W.3d 851, 856 (Ky. 2012) (citation omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or

---

[7] A.W. was a minor in 2018 when the incident occurred. He was 20 years' old when he testified at trial.

6

unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

"The court, upon motion and sufficient cause by either party, may grant a postponement of the hearing or trial." RCr[8] 9.04. When deciding a motion for continuance, the trial court should consider the circumstances of each case, including "the length of delay; previous continuances; inconvenience to litigants, witnesses, counsel, and the court; whether the delay is purposeful or caused by the accused; the availability of other competent counsel;[9] the complexity of the case; and whether denying the continuance will lead to identifiable prejudice." *Edmonds v. Commonwealth*, 189 S.W.3d 558, 564 (Ky. 2006) (citing *Snodgrass*, 814 S.W.2d at 581).

First, Whitney claims the delay in completing an investigation would have been minimal. On appeal, he argues that a continuance would have allowed him to make an open record or another similar request regarding Officer Bailey's conduct. He does not specify the length of delay necessary to complete this investigation. He cites *Herp v. Commonwealth*, 491 S.W.3d 507, 512 (Ky. 2016), wherein the defendant requested a two-day continuance to investigate possible defenses after amendment of the indictment against him. In this case, a similarly brief continuance would not have been unreasonable. However, it is unclear whether the inquiries Whitney proposes could have been completed in such a short period of time.

---

[8] Kentucky Rules of Criminal Procedure.

[9] Whitney raises no argument regarding this factor.

Second, Whitney argues that although there were prior continuances in the case, none are attributable to him. He was indicted in November and arraigned in December 2018. The case was first set for trial in September 2020. The trial court denied Whitney's motion to continue the trial because of the COVID-19 pandemic. Still, it later continued it to December 2020 in the interest of justice after the Commonwealth amended the indictment against Whitney. The trial was then postponed because of the pandemic. In June 2022, Whitney's counsel withdrew leading to another continuance of the trial to May 2023. The court then granted Whitney's new counsel another continuance to prepare for trial, which led to the final trial date of August 7, 2023. During the pendency of the case, Whitney violated the terms of his bond several times, and the trial court ultimately revoked his bond.

Any delay caused by the COVID-19 pandemic cannot be attributed to either party. Whitney also cannot be faulted for the delay caused by the withdrawal of his counsel. Despite the Commonwealth's assertions to the contrary, it is unclear if and to what extent Whitney's bond violations delayed the trial. Regardless of their cause, multiple continuances led to nearly five years elapsing from indictment to trial. *See Edmonds*, 189 S.W.3d at 565 (affirming the trial court's denial of continuance when more than two years elapsed between arraignment and trial); *see also Turner v. Commonwealth*, 544 S.W.3d 610 (Ky. 2018) (affirming the trial court's denial of continuance when the case was pending for almost five years before trial). This weighs against

granting yet another continuance, especially where Whitney requested a delay of indeterminate length.

Third, Whitney claims a continuance would not have substantially or significantly inconvenienced the litigants, witnesses, counsel, or the court. Any delay will cause some inconvenience, which is why "in order to become a factor for consideration, there must be some significant or substantial inconvenience" demonstrated on the record. *Eldred v. Commonwealth*, 906 S.W.2d 694, 700 (Ky. 1994) (*abrogated on other grounds by Commonwealth v. Barroso*, 122 S.W.3d 554 (Ky. 2003)). However, this Court has also acknowledged the challenges faced by trial courts in "assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." *Parker v. Commonwealth*, 482 S.W.3d at 401 (quoting *Morris v. Slappy*, 461 U.S. 1, 11-12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983)). Here, the trial court was especially concerned about inconveniencing jury members, but no significant or substantial inconvenience was proven on the record.

However, the Commonwealth convincingly argues that further delay would have significantly inconvenienced the minor victims. The trial court accurately reasoned that the testimony of T.G. and the sisters primarily proved the Commonwealth's case against Whitney. Considering the number of prior delays, these minor witnesses had likely been prepared for trial more than once, and yet another delay would have inflicted even more stress on them.

9

*See Edmonds*, 189 S.W.3d at 565. The trial court did not abuse its discretion in finding a continuance would be a major inconvenience.

Next, Whitney argues that he did not purposefully cause any delay. The trial court found the same, and the Commonwealth makes no argument to the contrary. This factor weighs in favor of granting a continuance.

Whitney argues that this case is complex because of the length of the available sentences, evidentiary issues, and the Commonwealth's late disclosures. We agree that some aspects of this case were complex. However, Whitney had nearly five years to prepare for and address those circumstances. He was granted a continuance when the Commonwealth amended the indictment against him. For these reasons, we are primarily concerned with whether and to what degree the disciplinary report heightened the case's complexity.

On this point, we are unpersuaded by Whitney's citation to *Eldred*, 906 S.W.2d at 700. Therein, the Court found that the complexity of the death penalty case weighed in favor of granting a continuance. *Id.* This matter is distinguishable from *Eldred* on two grounds. First, although the possible imposition of a life sentence is serious for a defendant, such a potential penalty does not present the same complexities that exist in death penalty cases. Second, Eldred's case was made more complex by the last-minute confession of a co-defendant, where there were already numerous potential problems with the reliability of informants, difficult hearsay, and confrontation issues. *Id.* This added complexity weighed in favor of granting a continuance.

10

Here, the Commonwealth's case relies on the credibility of testimony from victims, not informants. Whitney knew the credibility of these witnesses would be the crux of the case, and the defense counsel was able to address this through cross-examination. Production of the disciplinary report did not implicate the credibility of those witnesses or otherwise amplify the complexity of Whitney's case. Therefore, this factor does not weigh in favor of a continuance.

Finally, Whitney claims he was prejudiced by his inability to investigate Officer Bailey's misconduct. Proof of identifiable prejudice is "especially important" for a party to succeed on request for a continuance. *Taylor v. Commonwealth*, 611 S.W.3d 730, 735 (Ky. 2020) (citation omitted). To prove abuse discretion, a defendant "must state with particularity how his or her case will suffer if the motion to postpone is denied." *Id.* at 735-36 (citations and internal quotation marks omitted). The findings detailed in the disciplinary report are serious. However, Officer Bailey did not testify, and Whitney fails to articulate how he was prejudiced by his inability to investigate Officer Bailey's actions. Before the trial court, defense counsel did not articulate how Whitney was prejudiced and made the vague request for a continuance to investigate whether there was any "there there" regarding Officer Bailey's conduct in this case. This was insufficient.

Whitney cannot prove prejudice with "[c]onclusory or speculative contentions that additional time might prove helpful[.]" *Bartley v. Commonwealth*, 400 S.W.3d 714, 733 (Ky. 2013). The disciplinary report

11

shows Officer Bailey failed to reinterview witnesses in this case. Whitney speculates that additional time might have allowed him to uncover further misdeeds by Officer Bailey. Officer Bailey's misconduct, while serious, does not prove the police investigation was mishandled in a manner that prejudiced Whitney. When Officer Bailey failed to act, Major Dudinskie contacted the witnesses and reinterviewed them. He then testified at trial to the investigation and his knowledge of the disciplinary action against Officer Bailey. Although Whitney did not have the opportunity to cross-examine Officer Bailey, he made the jury aware of Officer Bailey's actions and suspension through his cross-examination of Major Dudinskie.

Whitney does not identify how his defense strategy was impacted by denying the motion to continue. He "has not identified in any specific detail a defense theory or mitigating evidence that [he] was not given an adequate opportunity to develop and pursue[.]" *Id.* at 734. The Commonwealth correctly asserts that its case was based primarily on the testimony of the victims and other witnesses with firsthand knowledge of the events in question, not the police investigation. Whitney's strategy at trial was to cast doubt on the testimony of the victims. The report did not affect this approach.

Furthermore, Whitney has not proven that the report was exculpatory in nature. This Court has found trial courts abused their discretion where "the defendant's ability to prepare a defense has been undermined, or at least significantly hampered, by last-minute changes in the prosecution's case, or by the Commonwealth's failure to disclose potentially exculpatory evidence . . . far

12

enough in advance of trial to give the defense a reasonable opportunity to investigate." *Parker*, 482 S.W.3d at 402-403 (footnotes omitted). However, we have upheld denials of last-minute requests to delay for investigation "where the exculpatory potential of the late-sought investigation is speculative and not specifically 'articulable,' and where the change in circumstances ostensibly calling for additional preparation does not undermine an anticipated defense." *Id.* at 403 (footnotes omitted). Whitney cites to cases wherein the appellate courts have reversed denials of motions to continue to allow for investigation where the exculpatory potential of late-disclosed evidence is clear. *See Mills v. Commonwealth*, 95 S.W.3d 838 (Ky. 2003); *see also Wilson v. Commonwealth*, 388 S.W.3d 127 (Ky. App. 2012). This matter is easily distinguished from both *Mills* and *Wilson.*

In *Mills*, during an officer's testimony at trial, defense counsel discovered the Commonwealth failed to produce his notes, including the name of an eyewitness who did not identify the defendant in a photo line-up. 95 S.W.3d at 841. This Court held that the trial court's denial of defense counsel's request for a continuance to locate the witness was erroneous. *Id.* at 842. The exculpatory potential of an eyewitness who did not identify the defendant as a perpetrator is clear. Here, the disciplinary report itself is not exculpatory, and Whitney has failed to identify any evidence of exculpatory potential he expected to find had he been granted a continuance.

In *Wilson,* the defendant was convicted of several drug-related offenses that resulted from substances found in the backseat of the "pool" police car, in

13

which officers placed him. 388 S.W.3d at 129. Despite defense counsel's requests, the Commonwealth did not produce the police pool car logs until the day Wilson's trial began. *Id.* at 129-30. The trial court denied Wilson's request for a continuance, and the arresting officer testified that he routinely checks his pool cars for weapons and drugs. *Id.* at 131. The trial court's denial of Wilson's request deprived his counsel of the opportunity to investigate the pool car's use log, which could have allowed doubt to be cast on the officer's credibility, which was central to the Commonwealth's case. *Id.* The Court of Appeals held that Wilson should have been allowed the opportunity to investigate because "there was a reasonable probability that the outcome of Wilson's trial would have been different had he been able to present evidence that prior occupants of the 'pool' car left drugs inside." *Id.* The exculpatory potential of the logs is less certain than the eyewitness testimony in *Mills*. However, it was possible that the logs could support his theory, and he was able to articulate how the logs impacted his defense strategy. Whitney fails to articulate such an impact.

Ultimately, Whitney offered the trial court nothing more than a speculative claim that an investigation into Officer Bailey's actions might uncover misconduct beyond what was detailed in the report. The relevant *Snodgrass* factors favor denying Whitney's motion to continue, and the trial court did not abuse its discretion.

14

## CONCLUSION

For the foregoing reasons, the judgment of the Henry Circuit Court is hereby affirmed.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Sean T. Pharr
Pharr Law Group, PLLC


COUNSEL FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General